**UNITED STATES v. DETENTE.**
**No. 10557.**

United States Court of Appeals
Seventh Circuit.
Oct. 24, 1952.

Joseph E. Green, Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty., Irwin N. Cohen, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before DUFFY, LINDLEY and SWAIN, Circuit Judges.

DUFFY, Circuit Judge.

Defendant and one Armando Piemonte were charged in Count 1 of the indictment with possession of counterfeit Federal Reserve Notes, with knowledge they were counterfeit, and with intent to pass them; in Counts 2 and 3 with the sale of such counterfeit notes; and in Count 4 with conspiracy to commit the offenses set forth in the preceding counts. During the trial Piemonte entered a plea of guilty on all counts, but when sworn as a witness emphatically denied that he had conspired with Detente and testified that defendant had no knowledge that Piemonte was dealing in counterfeit money.

The court found Detente guilty as charged in the indictment and imposed a 5 year sentence. On this appeal defendant's sole contention is that the evidence in the record is insufficient to sustain the judgment of conviction.

Considering the evidence most favorable to the government, the following facts were proved. Theodore Manella, an informer, was used as a decoy in this case. For some two years he had known Piemonte. Early in 1950, after a conversation with Harry Anheier, who was in charge of the United States Secret Service at Chicago, Manella,[1] made a contact with Piemonte telling him that he had a fellow from Detroit who wanted "to buy some money," meaning counterfeit money. Piemonte said he would let Manella know in a few days. Later Piemonte told Manella that he had samples and made an engagement to meet Manella on July 4 at Harlem and Touhey in Chicago, and on said date Manella did meet Piemonte there, the latter driving a 1941 Mercury car. Piemonte handed Manella an envelope containing two bills, a $10 and a $20, saying, "This is beautiful stuff but it is higher." Manella promised to call Piemonte and the latter left in his automobile. Manella then delivered the envelope to Mr. Anheier, who had been stationed about half a block distant from the place of the meeting.

A week later Manella called Piemonte by telephone from the office of the Secret Service and suggested a meeting at a certain hospital. Piemonte said it would take a few days to make a contact. Later (the exact date not stated) a meeting was had at the hospital and Manella told Piemonte that he wanted to make arrangements to buy $10,000 worth of counterfeit money. Piemonte said that it would take a few days to make a contact and he left. A few days later Manella met Piemonte at Cicero and Roosevelt in Chicago. Manella said that his man was ready to do business. A price of $1,400 was agreed upon for counterfeit bills of the face value of $10,000, of which $650 was to be paid down and the balance after the counterfeit money had been delivered.

On July 18 or July 19 Manella met Piemonte at Irving Park and Central, pursuant to a telephone call he had made from the Secret Service office. Manella said that his man was ready to do business and that he would have the money that night. Manella made an appointment to meet Piemonte at 8:00 P.M. on the same night at Irving Park and Central, and, having been instructed by Piemonte to bring an automobile to transport the counterfeit money, obtained an Oldsmobile automobile from a Secret Service agent, drove to that location, and waited until Piemonte arrived. Manella testified that while waiting for

1. Willie was the name that Manella used when talking to Piemonte.

Piemonte "some fellow" [2] walked up to him and "asked if I was Willie. He was a fellow I never saw before." He described the stranger as being 5' 10" in height, heavyset, and wearing a rust colored jacket.

Manella waited in his car for about 10 minutes after his brief conversation with the stranger when Piemonte drove up in his Mercury automobile, and Manella got into the front seat of that car. He testified that some fellow was seated in the back of the car but that he did not pay any attention to him or look at him. He did say, however, that the fellow wore a rust colored jacket. Manella handed over to Piemonte the $650 which he had obtained from a Secret Service agent.

While Detente was in the back seat of Piemonte's Mercury, and after Manella was introduced to him by Piemonte, Manella gave him the keys to the Oldsmobile and Piemonte said to him, "Watch that there is no tail on the car." Detente had some difficulty starting the Oldsmobile and Manella started it for him. Detente proceeded east into Irving Park, closely followed by Piemonte in his Mercury. A circuitous route was followed. Then Piemonte signalled Detente to stop and instructed him to drive the car to Polk and Ashland and to park it there and to leave the keys in the car. After doing so, Detente walked a block to a restaurant to obtain some coffee, and a bit later, while walking back toward the corner where he had parked the automobile, Manella got out of a taxicab and went up to Piemonte who was in the immediate vicinity of the Oldsmobile. Piemonte told Manella that "it" was in the car. He said, " * * * the stuff is under the seat of the car." Manella told Piemonte that the balance of the purchase price would be paid in about an hour at Pratt and Western. There is no direct testimony that Detente heard this conversation. Detente then got into Piemonte's car and was driven to Irving and Central where he had parked his Ford. Piemonte told him to drive north and meet him at Western and Pratt.

Manella took the counterfeit money from under the seat of the Oldsmobile and handed it over to Secret Service Agent Deckard, who then gave Manella the balance of the purchase price which was to be delivered to Piemonte. Shortly thereafter Detente appeared on the scene, driving his Ford. He drove east on Pratt for about half a block, made a U-turn, and came west and parked alongside Piemonte's car. After a brief conversation Detente continued west on Pratt for two blocks, made a U-turn, came east about one block, and parked at the south curb facing east, with the lights of his automobile extinguished. Two Secret Service agents drove up and took Detente into custody. Piemonte was arrested near Pratt and Western before the balance of the purchase money could be handed to him.

Upon being questioned, Detente stated he was in the neighborhood to see a married woman whose name he did not wish to disclose. (This story he later admitted was untrue.) Upon being confronted with Piemonte, Detente said he had never seen him before in his life, and Piemonte likewise denied knowing Detente.

Detente had been convicted of armed robbery in 1936. He met Piemonte in the penitentiary where the latter was confined from 1934 to 1944 after being convicted of armed robbery. The two men became friendly while in the penitentiary and from 1946 on, after each had been released, they saw each other frequently and visited each other's home.

▮ In considering whether the record in this case contains sufficient evidence to sustain the judgment of conviction, we keep in mind that it is no part of our function to weigh conflicting testimony, that the evidence must be viewed in the light most favorable to the government, and that if one count of the indictment is good in law and has been sufficiently proved, if the sentences are concurrent and within the prescribed maximum for such offense according to the statute, the judgment must

2.  Up to this point defendant Detente has not been mentioned as a participant in the episodes set forth.

be sustained. United States v. Bucur, 7 Cir., 194 F.2d 297, 299.

Defendant insists that the burden of proof was upon the government to show scienter, and contends that the fact that Detente was having conversations with Piemonte and was driving an automobile under suspicious circumstances did not prove that he knew that Piemonte was engaged in the sale and passing of counterfeit money. Defendant refers to United States v. Litberg, 7 Cir., 175 F.2d 20, a counterfeiting case, where this court reversed the conviction. As we did in United States v. Kelley, 7 Cir., 186 F.2d 598, 600, we point out that in the Litberg case we said, 175 F.2d at page 21: " * * * we must keep in mind the oft repeated rule that the weight and credibility to be attached to testimony of the witnesses is a matter for the trier of the facts and that we are required to take that view of the evidence most favorable to the government. * * * we must accept the proof most favorable to the government's theory, even though some of it is of doubtful validity and open to serious dispute. * * *"

Plaintiff's evidence did not constitute a strong case against Detente. However, there were three crucial events: (1) the meeting at Central and Irving Park Avenues when Manella furnished the automobile to Piemonte at the latter's request; (2) the return of that car to Manella with the counterfeit money under the front seat; and (3) the meeting at Pratt and Western Avenues for the payment of the balance of the purchase money. The trial judge was entitled to believe from the evidence that Detente was not only present on these three occasions, which he admitted on the stand, but also that he was one of the participants in the activities that were there transpiring that night in violation of the laws against counterfeiting. 18 U.S.C. §§ 472, 473.

There is sufficient evidence in the record to sustain Detente's conviction on Counts 2 and 3, on the basis that he aided and abetted the sale of counterfeit money by Piemonte, and under 18 U.S.C. § 2, one who aids or abets the commission of a crime against the United States is a principal. See: United States v. Carengella, 7 Cir., 198 F.2d 3, 6–7. There is also sufficient evidence to sustain his conviction under Count 4 charging conspiracy.

Judgment affirmed.