**UNITED STATES of America, Plaintiff-Appellee.**

**v.**

**Nicholas GUIDO, Defendant-Appellant.**

**No. 12090.**

United States Court of Appeals
Seventh Circuit.

Jan. 3, 1958.

Rehearing Denied Feb. 20, 1958.

1

Joseph E. Green, Richard E. Gorman, Chicago, Ill., for defendant-appellant.

Hon. Robert Tieken, U. S. Atty., Frank J. McGarr, John Peter Lulinski, Asst. U. S. Attys., Chicago, Ill., of counsel, for appellee.

Before DUFFY, Chief Judge, and MAJOR and PARKINSON, Circuit Judges.

DUFFY, Chief Judge.

By the verdict of a jury, defendant was convicted under a single count indictment of the crime of bank robbery. He was sentenced to imprisonment for a term of five years.

On November 4, 1955, the Maywood-Proviso State Bank, Maywood, Illinois, was robbed of approximately $22,000.00 by three robbers. The deposits were insured by the Federal Deposit Insurance Corporation. The robbers were masked and brandished machine guns during the course of the robbery. One of the robbers climbed up on a marble counter in the bank. The rubber heel which was a part of one of the shoes which he wore made a distinct and plainly visible print on the counter. F. B. I. agents made a number of pictures of the heel print, some of which were received in evidence.

Errors relied on consist of the trial judge's refusal to suppress evidence obtained as a result of a search of defendant's safety deposit box; refusal of the trial judge to suppress evidence obtained in the search of an apartment which was made at the time of the defendant's arrest; that much incompetent and irrelevant evidence was received which was prejudicial to the defendant although such evidence was later stricken; alleged improper evidence received on rebuttal and denial by the trial court of defendant's motion for acquittal.

Two days after the arrest of defendant, special agents of the F. B. I. obtained a search warrant from the trial judge and searched a safety deposit box in the Pioneer Trust and Savings Bank in Chicago, which box had been rented by defendant under the name of Don Schiavone. Currency in the amount of $3,150.00 was taken from the box. Relying upon Grau v. United States, 287 U.S. 124, 53 S.Ct. 38, 77 L.Ed. 212, defendant insists that the affidavit upon which the search warrant was obtained, was insufficient because it was, in part, based upon

evidence that would be hearsay if offered at the trial.

The only hearsay evidence referred to in the affidavit was that an informer had supplied the information that some of the currency stolen from the Maywood-Proviso Bank was in Safety Deposit Box No. 6728. However, the affidavit stated from personal knowledge that defendant had been identified as possessing and passing currency stolen from the Maywood-Proviso State Bank; that defendant Guido was also known as Don Schiavone, and that a man named Don Schiavone answering the description of defendant Guido had recently rented Safety Deposit Box No. 6728.

Under Rule 41, Federal Rules of Criminal Procedure, 18 U.S.C.A., the judge issuing the search warrant must be "* * satisfied that grounds for the application exist or that there is probable cause to believe that they exist * * *." If so satisfied, he is empowered to issue the warrant.

Insofar as the *dictum* in Grau v. United States, 287 U.S. 124, 128, 53 S.Ct. 38, 77 L.Ed. 212, may be said to uphold the view here espoused by the defendant, we think it has been repudiated by the later case of Brinegar v. United States, 338 U.S. 160, 174, 69 S.Ct. 1302, 93 L.Ed. 1879.[1] We hold the affidavit was a sufficient basis for the issuance of the warrant authorizing the search of the safety deposit box, and that the judge did not abuse his discretion in issuing the search warrant.

The bases for the motion to suppress as evidence certain articles seized at 1110 South Austin Blvd., Oak Park, Illinois, upon the occasion of defendant's arrest were a) that defendant's arrest was one of convenience, and b) that Government Exhibits 12 and 12-A (a pair of defendant's shoes) cannot be considered "means of committing a criminal offense."

It is true that there were a number of F. B. I. agents who had the apartment at 1110 South Austin Blvd. under surveillance on the day of defendant's arrest. Yet, only two agents saw defendant just before he entered the apartment. They saw him in traffic only momentarily, and then lost sight of him. When they again located defendant's Cadillac, it was parked in front of 1110 South Austin Blvd., and the driver was no longer in the car. There is no evidence in the record to substantiate defendant's claim that his arrest was one of convenience.

Rule 41(b), Federal Rules of Criminal Procedure, states in part: "(b) Grounds for Issuance. A warrant may be issued under this rule to search for and seize any property (1) Stolen or embezzled in violation of the laws of the United States; or (2) Designed or intended for use or which is or has been used as the means of committing a criminal offense; * * *" The rule further states: (g) "The term 'property' is used in this rule to include documents, books, papers and any other tangible objects."

Defendant argues that articles are not "the means" of committing an offense merely because they have been used in the commission of an offense. If, during a robbery, a robber had a gun in his hand, and wore a mask and gloves, the latter to prevent finger prints, defendant, apparently, would concede that such articles could be seized in a search incidental to a lawful arrest. However, defendant insists that shoes worn during a robbery do not come within that category.

It is not logical to place in different categories a mask and a hat which might have been worn and pulled down upon the face of the robber to make identification more difficult. It is likewise difficult to place in different categories a pair of gloves worn on the hands and a pair of shoes worn on the feet. Surely, the

1. In Brinegar, footnote 13 of the opinion stated: "But see, e.g. Grau v. United States, 287 U.S. 124, 128, 53 S.Ct. 38, 40, 77 L.Ed. 212, in which it was said by way of *dictum*, that 'A search warrant may issue only upon evidence which would be competent in the trial of the offense before a jury. * * *' For this proposition there was no authority in the decisions of this Court. * * * The statement has not been repeated by this Court." [338 U.S. 174, 69 S.Ct. 1310.]

**4**

latter would facilitate a robber's getaway and would not attract as much public attention as a robber fleeing barefooted from the scene of the hold-up.

In Harris v. United States, 10 Cir., 151 F.2d 837, at page 840, 169 A.L.R. 1413, the Court commented: " 'The line between fruit of the crime itself and mere evidence thereof may be narrow' and perhaps turn more on the good faith of the search than the actual distinction between 'fruits' and 'evidence.' " We think this is a sound observation.

■ It is well established that a search cannot be upheld which is merely exploratory and made solely to find evidence of guilt. United States v. Lefkowitz, 285 U.S. 452, 465, 52 S.Ct. 420, 76 L.Ed. 877, and Go-Bart Importing Company v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374. Where a search warrant was obtained for specifically described papers which admittedly had evidential value only, the search was held to be invalid. Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647. However, in Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231, where a ledger and utility bills were seized, it was held that they were means of committing a crime, namely, the operation of a saloon. In Morton v. United States, 79 U.S.App.D.C. 329, 147 F.2d 28, certiorari denied 324 U.S. 857, 65 S.Ct. 1015, 89 L.Ed. 1428, the court approved admitting into evidence a blood-stained shirt and trousers found in defendant's closet in a case where murder was the charge.

Admittedly, there has been some confusion in the language used by different courts as to what kind of articles may be seized incidental to an arrest of a defendant. However, in the case at bar, we hold the arresting officers were entitled to seize the pair of defendant's shoes and that same were properly received into evidence at the trial. We hold the arrest was not made as an excuse for a general exploratory search.

■ As a basis for our holding, we think well worth repeating the statement made by this Court in United States v. Pisano, 7 Cir., 193 F.2d 361, 363: "Under the Fourth Amendment of the Constitution the people are protected from unreasonable searches * * * Searches and seizures incidental to an arrest but without search warrants are not necessarily unreasonable but are, in the absence of unusual circumstances, entirely reasonable. The right to search the place where the arrest is made and to find and seize things connected with the crime as its fruits or as the means by which it is committed stems not only from the authority to search the person but also from the long standing practice of searching for other proofs of guilt within the control of the accused upon arrest. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652. Consequently the premises where a valid arrest is made, under the control of the person arrested, are subject to search without a search warrant. Such a search is not unreasonable. * * * The only essential of validity of a search incidental to an arrest is that it be made in connection with a valid arrest. * * * "

■ Defendant insists that much incompetent and irrelevant evidence was received with reference to the contents of his lock box and although the Court later struck same from the record, that it was, nevertheless, prejudicial. The Government undoubtedly was disappointed in the testimony of a woman bank teller who identified pencilled notations she had made on four $50.00 bills, and which bills were found in defendant's lock box. She first said she made the notations upon the day of the robbery, but upon cross examination, she was not certain of the date. The trial court then denied defendant's offer of the bills into evidence. However, much of her testimony remained, such as that a packet of twenty-five $2.00 bills was taken from her cage by one of the robbers.

Some of the testimony which defendant says was prejudicial although later stricken, was testimony to which he stipulated. However, the Court promptly admonished the jury to disregard the testimony which was stricken and also

gave adequate instructions with reference thereto. No request by defendant to admonish the jury was denied during the trial. No requested instruction to disregard portions of the testimony was denied. We hold there was no error in this respect.

Defendant argues that evidence received in rebuttal was improper and prejudicial. Defendant had attempted to establish an alibi by testifying on the trial that he was in the Roxy Movie Theatre across the street from his apartment on the evening of the robbery. He specified that he was in the theatre watching a movie entitled "To Catch a Thief" from about 6:00 P.M. to 8:30 or 9:30 P.M. Other testimony established that the robbery occurred about 6:22 P.M. Defendant also denied on the trial that he had made certain statements to F.B.I. agents such as that he had spent the night in question in another location.

On rebuttal, the Government offered evidence of F.B.I. agents as to statements which the defendant had made to them and which he had denied upon the trial. Testimony was also introduced which, if believed by the jury, completely demolished the alibi which the defendant had so carefully built up. We think all of such evidence was proper and no error was committed by receiving same.

The last and probably the most important point argued by defendant is that the evidence adduced by the Government was insufficient to sustain a judgment of conviction. We have read the long record containing the testimony in this case. Having in mind that the jury was the sole judge of the credibility of the witnesses, and that the experienced trial judge had observed these witnesses, we think the Court properly denied defendant's motion for acquittal, and that the jury's verdict of guilty, and the judgment of conviction thereon, must be upheld.

The evidence must, of course, be viewed in the light most favorable to the Government. United States v. De-tente, 7 Cir., 199 F.2d 286. When so viewed, we hold there is substantial evidence to support the judgment of conviction.

It was clearly established that the rubber heel of one of the shoes found in defendant's closet upon the occasion of his arrest was the heel which left a clear imprint on a marble counter in the bank. It was also established that one of the robbers in going from one cage in the bank to another, stepped upon the counter in question. Although the defendant did not specifically admit that the shoes were his, he did say "Well, they might be mine," and under the circumstances of their location, it was a permissible inference for the jury to make that the shoes belonged to the defendant and were worn by him on the day of the robbery.

Two packets of twenty-five $2.00 bills were taken from the Bank during the robbery. The Bank had a record of the serial number of each of said bills, and this record was introduced into evidence. It was proved that defendant used five of the bills stolen from the Bank in making purchases from a Sears, Roebuck & Co. store. The purchases were in five separate departments of the store, and defendant used only one bill in making each of said purchases. True, defendant told a story of winning these bills by gambling. However, the jury who knew that defendant had twice previously served prison terms for larceny, and who were the sole judges of his credibility, just didn't believe his story.

The jury also was entitled to consider the elaborate alibi which defendant attempted to build only to have it demolished by rebuttal witnesses. Undoubtedly, in the eyes of the jury, the defendant was entirely discredited.

It must be granted that the quantity of proof showing defendant's guilt is not great. But it is typical of the evidence that would be available in any robbery where the perpetrators were hooded or otherwise masked, and who made a getaway without trace. The volume of evidence in this case may not be great, but

its quality is high. We hold the Government sustained the burden of proof which was upon it, and that the judgment of conviction must be and is

Affirmed.

MAJOR, Circuit Judge (dissenting).

I feel obliged to dissent and shall briefly state my reasons therefor. I agree that a search warrant was properly issued for the search of defendant's safety deposit box in the Maywood-Proviso Bank. I also agree that the search of defendant's apartment incidental to his arrest was proper. I part company, however, with the statement, "The volume of evidence in this case may not be great, but its quality is high." In my view, the volume of evidence is meager and its quality inferior. The weakness of the government's case is at once apparent from the fact that it dwells upon how it demolished defendant's alibi. Of course, the validity of that defense was for the jury, but whether true or false it was without probative value in support of the bank robbery charge.

The sole affirmative proof relied upon by the government consists of two circumstances. The first is that defendant passed five $2 bills in a Sears, Roebuck & Company store, which were identified as having been stolen from the bank in the robbery. Thus, of fifty $2 bills stolen, five were found in possession of defendant. The significant fact regarding this possession, however, which renders it of little or no value, is that the bank was robbed November 4, 1955, and the five $2 bills were found in possession of defendant on January 14, 1956, seventy-one days after the robbery.

The second circumstance relates to the so-called rubber heel imprint testimony. An F.B.I. agent assigned to the F.B.I. laboratory in Washington concluded that the imprint on the counter in the robbed bank was made by the heel of the shoe found in defendant's apartment. The testimony of this witness is, in my view, far from conclusive, particularly in view of the fact that the government had no direct proof that the shoe belonged to defendant. This essential link had to be inferred from the fact that the shoe was found in defendant's apartment seventy days after the robbery.

Weak as the government's proof was, however, I agree, with some hesitation, that it was sufficient to take the case to the jury and that its verdict should be respected, providing the trial was free from prejudicial error. This, in my view, was not the case. The record reeks with testimony heard by the jury which cannot be characterized as other than prejudicial, even though it was subsequently stricken. For my purpose it is sufficient to refer only to that which had its genesis in the search made of defendant's bank box which admittedly was rented by defendant under an assumed name on January 14, 1956, seventy-one days after the robbery. As a result of the search of this bank box, $3,150 was seized. This money was produced in court by the government, displayed before the jury and a mass of testimony heard relative thereto. This testimony was offered evidently with the intention of identifying it or some of it with the money seized in the robbery. However, after the jury had witnessed the display and listened to this testimony, it developed that the government was unable to make identification. In fact, the testimony of the witness relied upon for this purpose was characterized by the court as "incredible." Thereupon, the testimony of this witness, as well as that of all other witnesses, concerning the money found in defendant's bank box, was stricken and the jury was specifically instructed by the court both at that time and subsequently to disregard it.

The trial judge did all that was possible to ameliorate the damaging effect of this testimony by admonishing the jury to disregard it. That the court succeeded is, in my judgment, highly improbable, particularly in view of the meager proof relied upon by the government. The situation calls for a reversal "unless it *affirmatively* appears from the whole record that it was not prejudicial." McCandless v. United States, 298 U.S. 342,

347, 56 S.Ct. 764, 766, 80 L.Ed. 1205. The record furnishes no basis for such a belief.

We are told that the government was disappointed in the testimony of its witness by whom it attempted, but failed, to make identification. I do not doubt that such was the case but this disappointment cannot be utilized to impair defendant's right to a trial free from prejudicial error. In cases where proof of guilt is strong and convincing, it may be that a reviewing court can say, as often has been done, that an error made during the course of the trial could not have affected the result and is, therefore, not prejudicial. There is no justification, however, in my opinion, for the application of such a theory in the instant case.

I would reverse and remand for a new trial.