**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Fred DAVIS, Defendant-Appellant.**
**No. 12870.**

United States Court of Appeals Seventh Circuit.

July 22, 1960.

Rehearing Denied Sept. 1, 1960.

See also D.C., 178 F.Supp. 919.

George F. Callaghan, Julius Lucius Echeles, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., Robert F. Monaghan, Asst. U. S. Atty., Chicago, Ill., of counsel, for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

A jury found defendant, Fred Davis, guilty on four counts of an indictment charging Fred Davis with three unlawful sales of narcotics to Dorothy Saunders in violation of Section 4705(a), Internal Revenue Code of 1954, as amended by the Narcotic Control Act of 1956, 26 U.S.C.A. § 4705(a), and with knowing and unlawful receipt, concealment, etc. after unlawful importation, of narcotics, in violation of Section 174, Title 21 U. S.C.A., as amended by the Narcotic Control Act of 1956.

Defendant was sentenced to twenty years' imprisonment on the first and second counts, to run consecutively, and to twenty years on the third and fourth counts, to run concurrently with the sentence on the first two counts, or to forty years in all.

The purported errors on which defendant relies in his appeal to this Court concern denial of petition to suppress evidence and motion for judgment of acquittal; and instructions to the jury.

In connection with the petition to suppress evidence, defendant testified that he had been arrested in his store without arrest or search warrant; that his person and the store had been searched; that a sum of money, part of which belonged to his partner, had been taken from him; that he was then taken to his apartment on the first floor at 4540 S. Drexel Boulevard, several miles away, where he found that the door had been broken in, that present in the apartment were several officers who had no search warrant, Dorothy Saunders, whom he said he did not then know, and his paying guest Bernice Toomer; that

he pointed out his own bedroom and acknowledged ownership of clothing in the apartment belonging to him, but coundn't say whether currency shown him by one of the officers was or was not his money.

It was stipulated that no arrest or search warrant was used.

Narcotics Agent James Bailey testified that on February 11, 1959, he had told Dorothy Saunders that he wished to buy narcotics for $75 and that she said she would take care of him. On her instruction Agent Bailey had driven to 43rd Street and Drexel Boulevard in Chicago, where Mrs. Saunders went into a drug store. When she came out, she said, "O. K., he is there" and directed Bailey to drive to 46th Street, where she again got out and walked north on Drexel Boulevard. Bailey testified that he did not see where she went, but that other agents were in the vicinity.

Agent Irving Lipshutz testified that on February 11, 1959, he saw Mrs. Saunders enter an automobile with Bailey; that he followed and saw her first enter what appeared to be a liquor store at 43rd Street and Drexel Boulevard, come out and re-enter the automobile, and then later, enter a gangway to the building at 4540 Drexel Boulevard from which she returned, in about five to ten minutes, to Bailey. He could not ascertain which apartment in the building she had entered.

Bailey testified that when Mrs. Saunders returned to him, she handed him a brown manila envelope. Bailey gave her $75. The serial numbers of the bills had been recorded. He field tested the contents of the envelope for narcotics and noted a positive reaction. He later saw the chemist's report showing that the substance he received contained heroin.

When asked about February 17, 1959,[1] Bailey testified further that he had told

Mrs. Saunders he wanted to do the same thing, that again he drove to 43rd Street and Drexel Boulevard where Mrs. Saunders entered the drug store, came out and said "he was there" and to drive to 46th Street, which he did. He gave her $75. She walked north on Drexel.

When asked about February 16, 1959, Agent Lipshutz testified that he again followed Dorothy Saunders and Bailey from 35th and Prairie, saw Mrs. Saunders enter a liquor store, come out in a few minutes, and then enter the front entrance of the building at 4540 S. Drexel Boulevard. He was dressed as a taxicab driver and, following Mrs. Saunders into the entryway and up the stairs of the building at 4540 S. Drexel Boulevard, he saw her knock at defendant's apartment door and be admitted.

Bailey testified that when Mrs. Saunders returned to the car on February 16th, she gave him a brown manila envelope containing a white powder, which, on testing, proved to contain heroin.

Bailey described a similar transaction on February 18th, with reference to $140 worth of heroin. On February 20th, Bailey testified, he again met Mrs. Saunders and went through the same routine. On cross-examination, he added that on this occasion she did not say "he is there" on her return from the drug store.

Agent Theodore Heisig testified that on February 20th, he knew Bailey planned to contact Mrs. Saunders and that, at about 7:30 p. m., in company with Agents Gabrys and Morris, he observed Mrs. Saunders enter the apartment house at 4540 Drexel Boulevard, and go up to the first floor apartment, knock on the door, say, "This is Dorothy," and be admitted. Agent Lipshutz, who also observed Mrs. Saunders walk toward the building, put the time at 7:00 p. m. Agent Bailey on cross-examination testified that it was about 8:15 p. m.

---

[1]. Apparently this was an error, and it was meant to refer to February 16th. This and one or two other misstatements of date in the transcript were evidently accepted by all parties as mere slips of the tongue as none of the briefs com-

ment on these discrepancies in date. The indictment charges sales as follows: Count I on February 11, 1959, Count II on February 16, 1959, and Count III on February 18, 1959.

when he met Dorothy Saunders on February 20, 1959. Defendant stresses the fact that it was already dark at the time. Heisig testified further that he was about to knock on that same door when an unidentified man came down the stairs and knocked on the door. Mrs. Saunders came to the door. Heisig told her he was a Federal Narcotics Agent and that she was under arrest. She slammed the door. The agents forcibly entered the apartment. They found Dorothy Saunders in the living room and made her arrest effective. Later Bernice Toomer who was also in the apartment was arrested.

When Mrs. Saunders had left him, Bailey had not waited for her return but had gone to defendant's apartment. There he had found Agents Morris, Heisig and Lipshutz, Dorothy Saunders, and Bernice Toomer. On cross-examination Bailey said that Agents Valentine, Singer, Gabrys and Morris came into the apartment after him. Bailey testified further that Mrs. Saunders told him Mrs. Toomer had taken the heroin. Under the covers of the bed on which Mrs. Toomer had just been sitting, Bailey found $140 and nine packages which proved to contain heroin. The serial numbers of the currency tallied with his list of bills given to Mrs. Saunders. After the seizure of the heroin, Agents Singer and Halasz were sent to defendant's store. They shortly returned with defendant, who admitted that the apartment was his. Bailey testified further that he checked money taken from defendant's person, and from clothing in defendant's apartment which belonged to defendant, and found $30 which tallied with his list of bills given to Mrs. Saunders. All of the agents who testified stated that they knew of the prior transactions described by Bailey.

Defendant argues that breaking down the door of his apartment in the nighttime without a search warrant was illegal; that the arrest of defendant without a search warrant was likewise illegal; that the arresting officers had no probable cause for an honest belief that defendant was committing a crime; and that the evidence seized in his apartment and from the person of defendant should have been suppressed on his motion to that effect seasonably made in advance of trial.

It is defendant's position that the agents forcibly entered defendant's apartment not to arrest Mrs. Saunders, but for the sole purpose of making an illegal exploratory search of defendant's apartment. Defendant argues that Agents Heisig and Gabrys had no probable cause to believe a crime was being committed in defendant's apartment by anyone, let alone by the defendant, and that Mrs. Saunders' arrest could have been effected at any time on February 11, 16, 18, or on February 20, before she entered defendant's apartment; and that, in any case, a warrant could have been secured because Mrs. Saunders was not fleeing apprehension and was, in fact, under adequate surveillance to prevent her escape. Besides, defendant argues, Mrs. Saunders could have been arrested in the living room, and there was no basis for search of other parts of the apartment.

As to the agents who arrested defendant in his store, defendant contends that even if they knew narcotics had been found in his apartment, they also must have known that Mrs. Toomer was in the apartment at the time and that the narcotics were found in the bed on which she had been sitting, and that they could not therefore have had probable cause for his arrest.

The government relies on Title 26 U. S.C. § 7607, which authorizes Narcotics Agents to

" * * * make arrests without warrant for violations of any law of the United States relating to narcotic drugs * * * where the violation is committed in the presence of the person making the arrest or where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation."

It is clear from the chain of evidence adduced at the hearing on the motion to suppress that the agents who arrested Mrs. Saunders and defendant all had reasonable grounds, from their own direct observation or from information available from fellow agents, to believe that both Mrs. Saunders and defendant had committed a violation of the laws relating to narcotic drugs. United States v. Walker, 7 Cir., 1957, 246 F.2d 519, 525, 526, 527; Draper v. United States, 1959, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327. In each case arrest preceded the search which was incidental to a lawful arrest. United States v. Guido, 7 Cir., 1958, 251 F.2d 1, 4, certiorari denied, 356 U.S. 950, 78 S.Ct. 915, 2 L.Ed.2d 843.

Agent Bailey testified further that when he asked Mrs. Saunders where the heroin was, she stated Mrs. Toomer had taken it. Agent Bailey then went to the adjoining room and to the bed on which Mrs. Toomer was sitting and found both the money and the heroin.

We cannot agree that delay in effecting Mrs. Saunders' arrest rendered it illegal. The statute on which the government relies does not require an arrest to be made immediately following the arresting officers' acquisition of knowledge constituting probable cause for arrest. Dailey v. U. S., 5 Cir., 1958, 261 F.2d 870, 872, certiorari denied 359 U.S. 969, 79 S.Ct. 881, 3 L.Ed.2d 836. According to Heisig's testimony, it was after he had identified himself as a federal narcotics agent and had placed Mrs. Saunders under arrest, that she closed the door, thus subjecting herself to necessary forcible means to make the arrest effective. The agents here gave notice of their authority and purpose, unlike the officers in Miller v. U. S., 1958, 357 U.S. 301, 313, 78 S.Ct. 1190, 2 L.Ed 2d 1332, cited by defendant. Nor can we conclude that the circumstances of this case were such as to impose an affirmative duty on the agents to delay search until a warrant could have been procured. The time element alone, judged retrospectively, may not be used as a measure of the reasonableness of the search. United States v. Rabinowitz, 1950, 339 U.S. 56, 65, 70 S.Ct. 430, 94 L. Ed. 653.

Defendant considers the proof of Counts I, II and III to be fatally defective in that the government failed to prove that Dorothy Saunders did not have the requisite written order form for purchase of narcotics.

The government relies on Chin Gum v. U. S., 1 Cir., 1945, 149 F.2d 575, 577, for the principle that it is not incumbent on the government to prove that the purchaser of narcotics charged under Title 26 U.S.C. § 4705(a), did so without a written order on the form prescribed. The Court there was dealing with Title 26 U.S.C. (Internal Revenue Code) Section 2554, which in the 1939 Code corresponded to our Title 26 U.S.C. § 4705(a).

In Taylor v. U. S., 8 Cir., 1927, 19 F. 2d 813, at page 816, the Court said that the government having established the sales, the burden was on the defendant to prove that he had paid the special tax; that the government was not required to prove a negative. In Martinez v. U. S., 5 Cir., 1928, 25 F.2d 302, at page 303 (2nd case) the Court said that the government was not bound to prove a negative when the fact as to whether there was a written order was one peculiarly within the knowledge of the defendant. In Sauvain v. U. S., 8 Cir., 1929, 31 F.2d 732, 733, the Court also held that it was not incumbent on the government to prove that the buyer of the narcotics had no written order. To the same effect, is the more recent United States v. Sabella, 2 Cir., 1959, 272 F.2d 206, 211.

Defendant's reliance on Blockburger v. U. S., 1932, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306; Gore v. U. S., 1958, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405; and United States v. Johnson, 7 Cir., 1956, 235 F.2d 159, 162; seems misplaced as these cases are distinguished from the case before us. In the above cited cases multi-count indictments were

based on a single transaction. In Block-burger one sale had been held to give rise to two offenses, stated in two counts: (1) a sale not in pursuance of a written order, and (2) a sale not from or in the original stamped package. The Trial Court had imposed consecutive terms of imprisonment. In order to ascertain whether the accused had committed two offenses or only one, the Supreme Court considered the proof and held that proof of a sale not from or in the original stamped package naturally would not also prove sale not in pursuance of a written order, arising from the same transaction. In Gore, one transaction gave rise to three violations. On appeal the legality of the sentence was questioned, as con-secutive terms of imprisonment had been imposed. In Johnson, it was argued that the defendant could not be consecu-tively sentenced for purchase and sale of the same narcotics when such pur-chase and sale constituted a single trans-action which had been fragmentized in the indictment. In each case the imposi-tion of the consecutive sentences was affirmed.

In the case before us, the indictment charges three separate sales, each with-out order. There is no question of pyramided sentences based on a single transaction.

Defendant questions the sufficiency of the evidence adduced at the trial to sup-port the conviction under Count II which alleged the sale on February 16th, and Count IV which alleged unlawful re-ceiving, concealing etc.

At the trial, Agent Bailey testified to meeting Dorothy Saunders on Febru-ary 11, 1959, driving her from 35th and Prairie Avenue, in Chicago, to 43rd and Drexel Boulevard, where she left the car and entered a drug store.

Dorothy Saunders testified that she had been a narcotics addict, that she had known defendant more than three years and had seen him several times daily for more than two years. She testified fur-ther that on February 11, 1959, she had been introduced to Agent Bailey as "Red," that he had driven her to 43rd and

Drexel Boulevard where she had tele-phoned the defendant; that the tele-phone was first answered by Bernice Toomer, his girl friend, who lived in the same apartment with defendant, and then by defendant whose voice she knew well.

Agent Bailey testified further that he then drove Mrs. Saunders on February 11, 1959, to 46th and Drexel Boulevard and gave her $75. The serial numbers of the bills had been recorded. Agent Lipshutz testified that he and Bailey had recorded the bill numbers of cur-rency used in transactions on February 11, February 16, February 18 and Feb-ruary 20, 1959. Bailey stated further that the bills had been treated with phos-phorescent powder.

Mrs. Saunders testified that she then went to defendant's home, that he opened the apartment door to her; that she told him she wanted half an ounce of heroin, that she gave him the money; that he went to the bedroom and came back with a package which she took to Bailey. Bailey testified that the package con-tained a white powder which on field test proved to contain a derivative of opium.

Bailey testified to similar transactions on February 16, February 18, and Feb-ruary 20, except that the sums of money used on February 18 and February 20 had been $140, and on February 20, when Mrs. Saunders left the car at 46th and Drexel Boulevard, Bailey had spoken to two other agents and then had gone up to the defendant's apartment; that the de-fendant's name appeared on the bell for that apartment. He testified that the apartment contained six rooms including two bedrooms, none of which was locked and to all of which anyone in the apart-ment could have had access. He testified further that he found $160 in a suit coat pocket; that later when defendant had been arrested and brought to the apart-ment, Bailey and the defendant discussed this coat. Bailey testified:

"He said, 'Was it in the back bed-room?' Or, 'Was it in my bedroom?'

I said, 'Yes.' He said, 'Everything back there is mine.' " (App. p. 79.)

Bailey testified that he had also found $140 between the sheets on the bed on which Mrs. Toomer had been sitting, along with several packages which proved to contain narcotics. The $140 had reacted positively to an ultra violet lamp test and was the same money Bailey had just given Mrs. Saunders.

Mrs. Saunders testified that on February 16, when she telephoned from 43rd and Drexel Boulevard, she had spoken to Mrs. Toomer, and that when she came to the defendant's apartment, Mrs. Toomer had taken her money and given Mrs. Saunders the package (which Mrs. Saunders later gave to Bailey) as well as additional drugs for Mrs. Saunders' own use. On February 18, Mrs. Saunders had spoken to defendant when she telephoned, had seen defendant in the apartment, had paid him the $140 and had secured from him the package which she gave to Bailey. On February 20, she had again spoken to Mrs. Toomer on the telephone and had seen Mrs. Toomer at the apartment; Mrs. Toomer had started out with the "stuff" when there was a knock at the door, Mrs. Toomer then turned to go back to the bedroom and the door crashed in.

Agent Lipshutz testified that when he was admitted to the defendant's apartment by Agent Heisig on February 20, he participated in a search which disclosed packets containing narcotics in a carpet sweeper in defendant's bedroom. It was stipulated that all these substances in question were narcotics.

Lipshutz testified further that he received $160 and $140 from Agent Bailey, and $500 and $341 from Agent Singer who stated, in defendant's presence, that the $341 was taken from defendant's person and the $500 from a Mr. Howard who was with defendant in defendant's store. Lipshutz had checked the numbers of this currency against his four lists and he had found $30 of the $160, all of the $140, and $60 of the $341 tallied with the lists.

Defendant contends that the sale on February 16, alleged in Count II, was between Mrs. Toomer and Mrs. Saunders; and that evidence is totally lacking to charge defendant with the allegations of Count IV on February 20, 1959. Defendant concedes that when, on trial, a defendant is shown to have had possession of a narcotic drug, that possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury. However, defendant asserts that he did not have exclusive possession of his apartment and that he was not even present when the narcotics were found; that Mrs. Toomer had as much possession as he because she also lived in the apartment and paid rent. Defendant had testified that Mrs. Toomer paid rent at the hearing on his motion to suppress evidence. At the trial however, no such evidence was given. Mrs. Saunders' uncontroverted testimony was that Mrs. Toomer was defendant's girl friend who lived with him. Mrs. Saunders testified that she did business with defendant "all of the time before, and every time I took him some money—he could tell how much I wanted because he could tell by the money I had." (App. p. 113.) On the 20th, when defendant was not in the apartment, Mrs. Saunders testified that when she got inside the door, she had just enough time to give Mrs. Toomer the money and Mrs. Toomer "started out with the stuff." (App. p. 121.)

On appeal the evidence must be viewed in the light most favorable to the government. United States v. Detente, 7 Cir., 1952, 199 F.2d 286, 288; U. S. v. Guido, 7 Cir., 1958, 251 F.2d 1, 5, certiorari denied 356 U.S. 950, 78 S.Ct. 915, 2 L.Ed.2d 843; United States v. Taylor, 7 Cir., 1959, 266 F.2d 310, 312, certiorari denied 361 U.S. 853, 80 S.Ct. 96, 4 L.Ed.2d 92.

The jury would be justified in concluding that Mrs. Saunders dealt with Mrs. Toomer solely as a representative and accommodation agent of defendant,

**100**

and that there was an established pattern of dealing with defendant.

United States v. Landry, 7 Cir., 1958, 257 F.2d 425, cited by defendant is easily distinguished on the question of possession. In Landry, narcotics owned by Landry were found in the pocket of another who stated that she was keeping them for Landry because if she let him have them, he would use them all at once. Thus in Landry, unlike here, control was expressly negatived. On the evidence adduced at the trial, the jury could properly conclude beyond any reasonable doubt that the narcotics in defendant's apartment on February 20, 1959, were in his possession.

We find substantial evidence to support the judgment of conviction.

Defendant lists a number of purported errors in connection with the instructions to the jury. The record clearly shows that defendant failed to comply with Rule 30, Federal Rules of Criminal Procedure, 18 U.S.C.:

> " * * * No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

As this Court said in United States v. Furlong, 7 Cir., 1952, 194 F.2d 1, 3, certiorari denied 343 U.S. 950, 72 S.Ct. 1042, 96 L.Ed. 1352, an objecting party must state his objection specifically, together with the grounds therefor, to give the Trial Judge an opportunity to make any correction he thinks proper.

Defendant does not dispute this rule, but argues that "plain error" has been committed here which may be noted by this Court under Rule 52(b), Federal Rules of Criminal Procedure:

> "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

Defendant characterizes the instructions as "palpably in error and grossly misleading." It is well settled that on review we must consider the instructions as a whole. United States v. DeMarie, 7 Cir., 1955, 226 F.2d 783, 787, and other cases therein cited. Careful scrutiny of the charge to the jury as a whole leads us to conclude that the jury could not have been misled as defendant contends and that defendant's substantive rights have not been adversely affected.

Other matters argued by defendant have been considered with care and found to be without merit.

The judgment of the Trial Court is affirmed.