**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Sidney B. ROWLETTE and Robert Vecelli, a/k/a Robert Savio, Defendants-Appellants,**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert VECELLI, a/k/a Robert Savio, Defendant-Appellant.**

Nos. 16401–16403.

United States Court of Appeals Seventh Circuit.

June 17, 1968.

William C. Erbecker, Indianapolis, Ind., Dante J. Taddeucci, Chicago, Ill., for defendants-appellants.

Thomas A. Foran, U. S. Atty., Gerald M. Werksman, Asst. U. S. Atty., Edward V. Hanrahan, U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Asst. U. S. Atty., of counsel.

Before CASTLE, Chief Judge, and KILEY and CUMMINGS, Circuit Judges.

CASTLE, Chief Judge.

These consolidated appeals arise from two bench trials on two separate but related indictments. In Nos. 16401 and 16402, the defendants-appellants, Sidney B. Rowlette and Robert Vecelli, prosecute individual appeals from the respective judgment of conviction and sentence entered as to each following trial on a one-count indictment charging them with the

unlawful sale, delivery, and disposition of a stimulant drug, a quantity of amphetamine tablets, on April 20, 1966, in violation of 21 U.S.C.A. § 360a(b). Each of the defendants was sentenced to imprisonment for a period of one year.

In No. 16403 defendant appellant, Robert Vecelli, prosecutes an appeal from the judgment of conviction and sentence entered following his separate trial on a two-count indictment charging him with similar sales and deliveries on February 3, 1966, and April 14, 1966, in violation of the statute. Vecelli was found guilty on both counts and sentenced to one year's imprisonment on each count to run concurrently with the other and concurrently with the sentence imposed for the April 20, 1966, offense.

The evidence amply establishes the February 3, and April 14, sales and deliveries of amphetamine tablets by defendant Vecelli to a government agent. On each occasion the sale and delivery was made in a furtive manner after a rendezvous at a tavern. The deliveries were made in the parking lot from the trunk of Vecelli's automobile. The carton handed over to government agent Haddon on each of these occasions contained bottles of tablets represented to be amphetamine. Each of the bottles did contain in part tablets of d1-amphetamine sulfate, a drug within the meaning of the statute.

The April 14, 1966, transaction occurred at approximately 9:00 p.m. Government agent Haddon retained possession of the carton overnight and delivered it to the United States Food and Drug Administration laboratory on the next day. We perceive no merit in Vecelli's contention that this over-night possession by the government agent made it error for the court to overrule Vecelli's objection to the admission of the exhibit. The chain of custody established by the evidence was sufficient to dispel any inference of substitution or change in the content of the exhibit. United States v. Burris, 7 Cir., 393 F.2d 81 (1968). Nor does the incident, as the defendant contends, serve to impair the probative value of the testimony it was stipulated the government chemist would give concerning analysis of the tablets involved with the result that the government's evidence is insufficient to establish beyond a reasonable doubt that Vecelli delivered amphetamine tablets.

The evidence relating to the April 20, 1966, sale and delivery, on which both defendants were convicted, may be summarized as follows.

On April 14, 1966, during the meeting between Vecelli and agent Haddon at McGorey's Tavern in Forest Park, Illinois, Vecelli informed Haddon that he would have 500,000 amphetamine pills on the 19th of April and inquired if Haddon would be interested in purchasing them. Haddon indicated he would be if the price was right. Vecelli then placed a telephone call after which he told Haddon that he had confirmed the order. Pursuant to arrangements made on April 18, Haddon telephoned Vecelli on the morning of the 20th and informed him that he and his customer were in town and ready to deal for the pills. Vecelli said he had the pills but would prefer to deal at night. He asked Haddon to meet him alone at the tavern at 8:00 p.m. Haddon did so, and Vecelli told him that he had the drugs stored at two locations, six cases at one and nine at another. Vecelli stated that he had taken a partner, because he did not have enough money "to put up for this amount of drugs at a time". Haddon and Vecelli drove to a location in Cicero where after entering a building Vecelli returned with a bottle bearing an amphetamine label and containing approximately 1,000 tablets. He gave the bottle to Haddon, who had told Vecelli that he would have to have a sample to show his customer before the latter "would front the $5,500" agreed upon. Vecelli requested that Haddon drop him off at the tavern inasmuch as he did not want to meet any of Haddon's people.

After dropping Vecelli off at the tavern Haddon met with government surveillance agents. He told the agents what Vecelli had said about having a

partner. A field test was made on two of the tablets from the bottle Vecelli had furnished as a sample. The results of the test were positive, indicating the possible presence of amphetamine.[1]

Haddon then returned to the tavern and informed Vecelli that the merchandise was satisfactory and that he had the purchase money. Vecelli told Haddon that they would each take a car and first go to the place where the six cases were stored. Haddon followed Vecelli to the Cicero location where Vecelli obtained six cartons which were placed in the trunk of Haddon's car. Vecelli stated that his partner had the other nine cartons at a motel, and instructed Haddon to follow him there. When they arrived Vecelli told Haddon to pull up alongside Room 16. By the time Haddon had parked and opened the trunk of his car, Vecelli was coming out of the room with a carton. He walked over to Haddon's car and handed the carton to Haddon. When he started back toward the room Haddon started to accompany him, but Vecelli held Haddon back and said, "Don't come into the room. My partner doesn't want anybody to see him". At that moment defendant Rowlette came to the door of the motel room with one of the cartons in his hands. Vecelli walked over to the door, Rowlette handed the carton to him, and Vecelli brought it over to Haddon who placed it in his car. At that point Haddon called Vecelli aside, away from the doorway, identified himself as a federal agent and placed Vecelli under arrest. The government surveillance agents with whom Haddon had previously met had followed Haddon and Vecelli to the motel. They observed Vecelli emerge from Room 16 and hand a carton to Haddon. They then observed Vecelli standing in the doorway where he turned around and then turned back again and handed a carton to Haddon. The agents knew of Vecelli's statement that he had a partner in the transaction, and that nine of the promised cartons were to be picked up at the second location. The surveillance agents entered the room. Rowlette and the seven additional cartons were found in the room. Agent Gallagher, one of the surveillance agents, placed Rowlette under arrest. Rowlette was taken to the Bureau of Drug Control office. He there inquired of agent Braseth, who had participated in the arrest, "Bob set me up, didn't he?", and when asked in reply, what would Vecelli gain by that, Rowlette said, "Because I am the bank—Bob is not out any money because of this bust".

A motion to suppress filed by defendant Rowlette was denied, and over his objection, the two cartons and their contents delivered from the motel room, and the seven taken from the room at the time of his arrest, were admitted in evidence against him as well as against Vecelli.

▪ Rowlette's motion to suppress the evidence seized from the motel room at the time of his arrest and, by implication, his statement made subsequent to the arrest, was heard with the case-in-chief. The court's rulings on the motion, and on the objection to the admission of the nine cartons and their contents, were correct. The surveillance officers who arrested Rowlette, on the basis of their surveillance observations and the information related to them by Haddon, had ample basis for reasonable belief that the cartons being delivered from the motel room contained amphetamine tablets and that the person in the room assisting Vecelli in their delivery was the partner Vecelli had claimed to have. The officers, therefore, had probable cause to arrest Rowlette, the man found in the room in apparent control of the remaining cartons. Brinegar v. United States, 338 U.S. 160, 175–178, 69 S.Ct. 1302, 93 L.Ed. 1879. Cf. United States

---

1. It was stipulated that the government chemist if called as a witness would testify that chemical analyses made under his direction and supervision established that the contents of the "sample" bottle were amphetamine tablets; and that the contents of the additional bottles involved in the April 20 transaction were approximately 5% amphetamine tablets and 95% caffeine tablets.

v. Ruffin, 7 Cir., 389 F.2d 76, 79. And, in the circumstances of the case—the door to the motel room being open—the entry effected did not invalidate the arrest. Ng Pui Yu v. United States, 9 Cir., 352 F.2d 626. The seizure of the cartons found in the room was a lawful incident to a valid arrest on probable cause. Likewise, Rowlette's post-arrest statement, made after he was given the proper constitutional warnings, was admissible.

██ Thus, taking the evidence in the light most favorable to the government, as we must on appeal (Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680), we are confronted with uncontradicted testimony that the defendant Vecelli on the three different occasions involved sold amphetamine tablets to agent Haddon, and that on the third occasion defendant Rowlette both actively participated in and financed the sale and delivery of the drug.

Defendants' remaining contentions upon which each predicates the existence of error requiring reversal of the convictions are that the indictments are fatally defective for failure to negate exceptions or exemptions contained in § 360a, and that the evidence is insufficient to sustain the convictions because of the absence of proof negating the applicability of each exception or exemption.

Section 360a does exclude from its purview the sale, delivery, or disposition of a depressant or stimulant drug made in the ordinary course of the business, profession, occupation, or employment of specifically designated and enumerated classes of persons including manufacturers, wholesale druggists, pharmacies, hospitals, practitioners licensed to prescribe and administer such drugs, common carriers, and others whose activities with respect to the drugs are normally proper and abuse-free.

The defendants urge that as a prerequisite to a constitutionally valid conviction it was incumbent upon the government to negative the exceptions and exemptions in the indictments. They also contend that the government had the burden of proving the inapplicability of the exceptions or exemptions contained in § 360a.

██ But authoritative precedents do not so hold. In McKelvey v. United States, 260 U.S. 353, 357, 43 S.Ct. 132, 67 L.Ed. 301, the controlling principle is stated as follows:

"By repeated decisions it has come to be a settled rule in this jurisdiction that an indictment or other pleading founded on a general provision defining the elements of an offense, or of a right conferred, need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere, and that it is incumbent on one who relies on such an exception to set it up and establish it."

The above rule is followed and applied in United States v. Safeway Stores, 9 Cir., 252 F.2d 99, 101, where it is observed:

"If the defendant comes within the exception or exemption found in [the statute], these are matters for it to set up and establish as a defense."

See also, in this connection, United States v. Davis, 7 Cir., 281 F.2d 93, 97, and Nicoli v. Briggs, 10 Cir., 83 F.2d 375, 379.

██ In our opinion the exceptions or exemptions specified in § 360a may, insofar as burden of proof is concerned, be equated with affirmative defenses. Whether a defendant and his activity occupy an exempt status is a matter peculiarly within his knowledge and with respect to which he can be fairly expected to adduce the proof. The burden of proving the facts necessary to establish such an affirmative defense is upon the defendant. A.L.I. Model Penal Code, § 1.12(3) (Prop.Off. Draft 1962).

Defendants' suggestion that such interpretation and application of the statute would here violate 5th Amendment rights because the establishment of exempt status would have required them to testify and to face impeachment on

account of previous criminal convictions overlooks that an exempt status, if it existed, could have been established by the testimony of others without the defendants having taken the witness stand. It is incredible that the defendants could be drug manufacturers, wholesale druggists, licensed practitioners, or in any of the other exempt categories, without evidence of such fact being available from a source independent of their own testimony.

Moreover, the testimony here adduced in establishing the government's case is replete with proof of furtive conduct on the part of the defendants which permits, if it does not compel, a reasonable inference that the sales and deliveries were not "in the ordinary and authorized course" of a business, profession or occupation enjoying an exempt status. The realities of the circumstances here presented serve only to highlight the artificiality of the defendants' arguments concerning burden of proof and insufficiency of the evidence.

Each of the judgment orders of conviction and sentence in all three of the appeals is affirmed.

Affirmed.