### UNITED STATES v. RICHMOND.
#### No. 4898.

District Court, S. D. West Virginia.
Nov. 18, 1944.

L. E. Given, U. S. Atty., of Charleston, W. Va., for plaintiff.

Howell M. Tanner, of Bluefield, W. Va., for defendant.

MOORE, District Judge.

Everett Henry Richmond was convicted on two counts of an indictment, one of which charged him with working at an unregistered still, and the other with making, possessing, and fermenting mash fit for distillation. Motion was made to set aside the verdict and grant a new trial. Because of the importance of the questions involved it seems proper to discuss them at some length; hence this opinion.

The Government's case rested principally on the testimony of Lester Groves, an agent of the Federal Alcohol Tax Unit. Groves testified that while observing a moonshine still, to whose location he had been directed by an informer, he saw the defendant come to the site of the still and there stir and sample the contents of some barrels containing mash. Defendant was not arrested at the still, but on the following day Groves, together with other enforcement officers, went in the evening to defendant's home for the purpose of arresting the defendant in case he should be identified as the person seen at the still. They were invited into the house, where they found the defendant and his wife in bed. Groves thereupon positively identified the defendant as the man whom he had seen stirring and sampling the mash, and proceeded to arrest him.

The house contained two bedrooms, a kitchen, and a pantry between the kitchen and the back porch. After making the arrest, Groves searched the house. In the pantry were several glass jugs which gave forth the odor of moonshine whiskey, and one of which contained about a spoonful of the same contraband beverage. Groves also saw on the floor of the pantry a piece of linoleum whose pattern corresponded with that of some linoleum found at the still, where it was used to cover the mash barrels. Several articles of defendant's clothing were taken from the house and were used in evidence at the trial for the purpose of demonstrating that other clothing found at the still matched with that admittedly belonging to the defendant. Defendant tried to escape from the officers after his arrest, but was recaptured.

At the trial defendant was asked on cross-examination whether he had not been convicted three years before on a moonshine still charge. He answered in the affirmative His counsel moved the Court to instruct the jury that such prior conviction must be considered by them only to the extent that it might affect the defendant's credibility as a witness; but the Court declined so to limit its effect and, on the contrary, told the jury that the prior conviction might be considered by them as evidence of a tendency or predisposition on the part of the defendant to violate the law by operating a moonshine still.

Defendant denied that he was the man whom Groves saw at the still and his alibi was supported by other witnesses.

The foregoing is substantially all the evidence upon which the defendant was convicted.

The material grounds for the motion to set aside the verdict and grant the defendant a new trial are:

1. That the statutes under which the indictment was framed have been repealed;

2. That the arrest of the defendant and the search of his premises were illegal;

3. That one of the counts on which he was convicted charged him with making, *possessing*, and fermenting mash fit for distillation, whereas the statute contains no prohibition against possession; and

4. That evidence of his prior conviction was admissible only as affecting the defendant's credibility as a witness and for no other purpose.

Taking up these grounds of objection in a different order, the contention that the statutes have been repealed may be disposed of briefly. The cases cited by the defendant to sustain his argument on this point were cases which arose before

the enactment of the Internal Revenue Code of February 10, 1939, c. 2, 53 Stat. 1, 26 U.S.C.A.Int.Rev.Code, § 1 et seq. By this codification of the Internal Revenue Laws of the United States, Congress re-enacted the statutes pursuant to which the indictment in this case was framed, which appear as Sections 2831 and 2834, Title 26 U.S.C.A.Int.Rev.Code. Whatever may have been their status prior to the Act of 1939, these statutes are now in full force and effect.

The Government argues that the charge of "possession" in the indictment should be considered as mere surplusage. However, as defendant points out, the Court was mis-led by the presence of this charge in the in-dictment into making the following state-ment to the jury in the Court's charge:

"If you believe that Mr Groves is tell-ing the truth when he says he saw this man there, and if you believe his identifica-tion of the man, then it would be your duty to find him guilty, because Mr. Groves says that he saw this man go to each one of a number of barrels of mash, take the cover off and stir it around, and taste it; and those acts are sufficient at least for you to base a verdict on that he had possession of that mash."

■ But, says the Government, defend-ant cannot object to this part of the charge, because no exception was taken at the time, and the objection is now too late. I do not agree. This is a plain error, which was induced by the Government through bringing into the indictment a charge which cannot be supported by the statute. The jury may have followed the Court's sug gestion that the defendant's conduct in connection with the mash was evidence of possession rather than evidence of making or fermenting. On this point alone the conviction of defendant on the count of the indictment containing the charge of pos-session must be set aside.

■ I am of opinion, also, that it was error for the Court to tell the jury that evi dence of defendant's prior conviction of a felony could be considered for any other purpose than as it might affect the defend-ant's credibility as a witness. It is said in Wharton's Criminal Evidence, Vol. 1, 10th Edition, pages 59, 60: " * * * when such evidence (of prior conviction) is of-fered simply for the purpose of proving his commission of the offense on trial, evi-dence of his participation, either in act or design, in commission or preparation, in other independent crimes, cannot be re-ceived." The only exceptions to this rule which I have been able to find relate to similar offenses committed at or about the same time, which may be admitted on the question of intent, purpose, design, knowl-edge, motive, or system. Tincher v. United States, 4 Cir., 11 F.2d 18; Breedin v. Unit-ed States, 4 Cir., 73 F.2d 778; Caldwell v. United States, 4 Cir., 78 F.2d 282.

I have seen no cases which support the proposition that prior convictions or un-lawful transactions of a defendant may be introduced in evidence against him to prove a tendency or predisposition on his part to commit offenses of the kind with which he is presently charged. Our Court of Appeals has expressly declared the ad-mission of such evidence to be prejudicial error in a number of cases, among which are: Simpkins v. United States, 4 Cir., 78 F.2d 594, and Sutherland v. United States, 4 Cir., 92 F.2d 305. The Govern-ment concedes that the effect of the evi-dence of prior conviction should have been confined to the issue of defendant's credi-bility as a witness, but urges that objection was not timely nor sufficiently made. In this the Government errs. Defendant's counsel excepted at the time to the Court's ruling on his motion to limit the effect of the evidence to the question of credibility.

■ Lastly, defendant contends that his arrest by Groves and the search of his premises were illegal, and that, therefore, evidence procured by means of the search should have been excluded from considera-tion by the jury. These contentions raise questions which are vital in their bearing upon the constitutional right of citizens to be protected against unreasonable searches and seizures, and their equally important right of immunity from illegal arrests. To the shallow and undiscerning mind it may appear absurd and illogical that evidence pointing clearly to the guilt of a defend-ant should be ignored and excluded from consideration, merely because it may have been obtained by illegal or unconstitutional means. Why should a criminal be pro-tected by the law, and sometimes permitted to escape punishment, because of a tender regard for his right of immunity from un-lawful searches and seizures? The answer which the wise man makes to such a ques-tion, which is also the answer of the law, is that only thus may the salutary provisions

of the Constitution, made to "secure the blessings of liberty to ourselves and our posterity," be maintained and kept alive. The constitutional guaranties were not established for the benefit of criminals, but to protect the innocent. Nevertheless, if they are permitted to be infringed in order to obtain evidence against the guilty, how shall we have assurance that the innocent will not likewise suffer; since it is only after the search and seizure are made that their results can be known? Our forefathers were only too familiar with the notorious "writs of assistance" and other intolerable abuses which had grown up and which might be expected to continue to grow and flourish in the absence of such guaranties as were inserted in the Constitution for the protection of the privacy of the home. Courts must be vigilant to detect and check any and all invasions of the constitutional right of immunity from unreasonable searches and seizures, without regard to the indicated guilt or innocence of the person whose premises are the object of the search; otherwise, the right itself may be insidiously undermined and destroyed.

The arrest was not unlawful. An officer who has reasonable cause to believe that a person has committed a felony may arrest him without a warrant, even though the felony may not have been committed in the presence of the officer. It is otherwise as to a misdemeanor, for in such case the misdemeanor must have been committed in the presence of the officer to justify him in arresting the misdemeanant without a warrant. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; Papani v. United States, 9 Cir., 84 F.2d 160; United States v. Vleck, D.C., 17 F.Supp. 110. Not only did Groves have reasonable cause to believe that the defendant had committed a felony, but according to his testimony at the trial he had actually seen him engaged in conduct from which Groves might reasonably infer that the defendant was engaged in committing a felony (making and fermenting mash) in the officer's presence. Groves was lawfully on the premises, since he had gone there for the purpose of arresting the defendant, and had gained entrance not through the use of force, but after being invited by the defendant to come into his house.

Nor was a reasonable search of the premises unlawful under the circumstances. An officer having made a lawful arrest is within his rights in proceeding to make a search of the immediate premises for the purpose of discovering and seizing any contraband articles which may have been used by the defendant in connection with the violation of law with which he is charged. Carroll v. United States, supra, Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas.1915C, 1177. 1 Wharton Criminal Procedure, 10th Edition, § 97. But the right of search and seizure extends no further. Even with a valid search warrant, the searching officer is not permitted to seize personal property of the defendant lawfully in his possession and which has no relation to or connection with the offense with which he is charged. The seizure of such private property, innocent in character, and its subsequent production in evidence, is equivalent to compelling the defendant to be a witness against himself, and is prohibited by the Fifth Amendment to the Constitution. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647; United States v. Lefkowitz et al., 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775.

Applying the principles which I have outlined to the instant case, it is clear that the articles of wearing apparel belonging to the defendant which were seized and afterwards introduced in evidence for purposes of demonstration and comparison with clothing found at the still site were illegally seized, and therefore should not have been admitted in evidence. The same rule applies to evidence of the linoleum found in the pantry. Although it was not seized nor physically introduced in evidence, the oral testimony of Groves as to its presence in the pantry was inadmissible, since as to it the search was not justified. Evidence of the finding of the jugs containing moonshine whiskey was properly admitted, since these jugs might logically be inferred to have been a part of the defendant's equipment for use in operating the still.

For the reasons set out in this opinion the verdict of the jury will be set aside and the defendant will be awarded a new trial.