Calvin W. PRUITT, Appellant,

v.

C. C. PEYTON, Superintendent of the
Virginia State Penitentiary,
Appellee.

No. 9436.

United States Court of Appeals
Fourth Circuit.

Argued Sept. 25, 1964.

Decided Nov. 19, 1964.

Michael L. Soffin, Richmond, Va.
(Court-assigned counsel), for appellant.

Reno S. Harp, III, Asst. Atty. Gen. of
Virginia (Robert Y. Button, Atty. Gen.
of Virginia, on brief), for appellee.

Before HAYNSWORTH, BRYAN and
J. SPENCER BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge:

Has the prisoner deliberately bypassed
the state court procedures available to
him and thereby forfeited his right to a
federal court hearing? The district court
so held and dismissed his petition for a
writ of habeas corpus without an eviden-
tial hearing.

On May 15, 1958, Pruitt was tried and
convicted in the Circuit Court of Caroline
County, Virginia, by the court sitting
without a jury, on two separate charges
of armed robbery, and he is presently
serving a thirty year sentence for one
of these convictions. At this trial, which
involved the possibility of a death pen-
alty, there was no court reporter, and
consequently no stenographic record of
the proceedings was made. After the
sentencing, Pruitt was immediately
taken to Fairfax County, Virginia, where
he pleaded guilty to a murder charge and
was sentenced to life therefor. It would
appear from this record that he is now
under total sentences of "life and 73
years."

When first admitted to prison, Pruitt
was inadvertently recorded as serving

the life sentence, apparently because he had been sent to the prison immediately after his sentencing in Fairfax County; and it was not until nearly a year later that the error was corrected on the prison records. In the interim Pruitt filed habeas corpus proceeding in the state court attacking his two sentences for robbery. This petition was dismissed by the Virginia Supreme Court of Appeals, apparently on the basis of an answer by the respondent custodian alleging that Pruitt was then serving the life sentence. Although the error was discovered and corrected on the prison records, apparently the prisoner was not informed. Again, he sought by a postconviction proceeding to attack his sentence, this time his life sentence, only to have that proceeding dismissed also on the ground that he was in fact serving the thirty year term for robbery.

On July 18, 1962, the district court entered an order which detailed the history of Pruitt's aborted efforts to have his constitutional rights adjudicated in the state courts and further indicated that he was then free to attack in the state courts his thirty year sentence on any grounds. The final paragraph of that order contained these sentences:

> "If he is met with a plea of res judicata, he may exhaust his remedies, including an application for certiorari to the Supreme Court of the United States. As to the issue of insanity as of May 15, 1958, he is undoubtedly entitled to a plenary hearing, and if not accorded such hearing by the state court, he may thereafter seek relief in the federal court." (Emphasis added.)

On August 1, 1962, Pruitt dutifully filed his habeas petition in the state court attacking his thirty year sentence. By July 11, 1963, he had acquired court-appointed counsel who filed an amended petition. This amended petition listed seven grounds for relief, including contentions that a confession was improperly introduced in evidence at the trial because it was obtained from Pruitt by coercion at a time when he was incompetent and that Pruitt was insane at the time of trial. Pruitt's counsel here vigorously attacks the fairness of the state habeas trial. We have read the record for background, but we refrain from commenting upon this point, since it may become necessary for the district court to pass upon it. At the insistence of the Attorney General's representative at that hearing, the state court refused to construe the petition as raising an issue of physical or psychological coercion and confined its ruling to the issue of insanity. On July 31, 1963, the state court entered an order denying Pruitt's habeas petition. On November 29, 1963, a newly appointed counsel appealed from this decision to the Virginia Supreme Court of Appeals.

On January 6, 1964, Pruitt wrote to the Clerk of the Supreme Court of Appeals of Virginia that he was withdrawing his appeal and was notifying his court-appointed counsel to this effect. On January 16, 1964, Pruitt filed another pro se petition with the federal district court asserting that he had met with a plea of res judicata in his appeal to the state court. The district court ordered his petition filed but noted that it was premature until the Virginia Supreme Court of Appeals took final action.[1] On January 20, 1964, the Court of Appeals acquiesced in Pruitt's withdrawal of his appeal without communicating with his court-appointed counsel. On February 18, 1964, the district court dismissed Pruitt's habeas corpus petition without a plenary hearing. Subsequent efforts to reinstate his state court appeal came to naught.

With all due respect to the district court judge, whose patience has been sorely tried, we think this record entitles Pruitt to an evidential hearing to determine whether he has knowingly and understandingly abandoned or deliberately

---

1. This order did not come to Pruitt's attention until after he had written to the Clerk of the Virginia Supreme Court of Appeals withdrawing his appeal.

bypassed the state courts. On the face of this record, it is not apparent that such was his intent. It is not enough that he intended the immediate consequences of his act—to terminate his state court habeas proceeding—if in good faith he thought that his contentions were already decided against him by the state courts and that the appeal was a mere formality which barred his recourse to the federal courts. It is difficult to believe that Pruitt would have knowingly and understandingly performed an act, the only consequence of which was to preclude him from achieving the one objective for which he had persistently striven since the rejection of his original petition by the federal court in April of 1962, with the promise that if the state courts held his rights "res judicata", the federal court would hear him. Pruitt's letter to the Clerk of the Virginia Supreme Court of Appeals, his correspondence with his attorney, and his petition in the district court spoke of his "being met with a plea of res judicata" in the state court. It is difficult to follow his line of reasoning or indeed to make any sense out of his prolix and confused arguments. One thing, however, is clear—he, not unlike some lawyers, thought he had discovered magic in a Latin phrase.

The standard which the district court should apply to the determination of the issue of waiver is set forth in Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963):

> "But we wish to make it very clear that this grant of discretion is not to be interpreted as a permission to introduce legal fictions into federal habeas corpus. The classic definition of waiver enunciated in Johnson v. Zerbst, 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461] —'an intentional relinquishment or abandonment of a known right or privilege'—furnishes the controlling standard."

■ This test must be applied to the acts of a prisoner who was acting without advice of counsel, who was contesting his sanity, and who informed the Virginia Supreme Court of Appeals that he had not consulted his court-appointed counsel before acting.

■ The State of Virginia concedes that as to the issue which was adjudicated by the state habeas judge, i. e., insanity, Pruitt's state court remedies are barred and that, therefore, if the district judge decides he did not knowingly and understandingly bypass his state remedies with respect thereto, it is mandatory that he receive a federal court hearing. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). As to those issues which the state habeas petition can reasonably be construed to have raised but which were not adjudicated by the state habeas court, i. e., the bias of the original trial judge and physical or psychological coercion, we are inclined to feel that Pruitt's state procedural remedies are foreclosed by his withdrawal of his appeal. It is possible that the Virginia Supreme Court of Appeals may reach this point in Cunningham v. Frye, which is now pending before that court. In the absence of further enlightenment from that case, we think Pruitt has exhausted all state remedies now open to him on these issues also. Code of Virginia (1950) § 8–605. Unless the district judge decides that Pruitt waived his state court remedies, he would also be entitled to be heard in the federal court on these issues. Townsend v. Sain, supra. In view of the time and money which the State of Virginia has already spent on this case, it is to be regretted that evidential hearings must now be held in the federal courts.[2]

Reversed and remanded.

---

**2.** Since Virginia pays both prosecution and court-appointed counsel, it would seem to be in the best interest of the state as well as the prisoner to avoid repeated habeas hearings by construing petitions as broadly as the federal courts. A method of alleviating the problem of repeated hearings in habeas corpus cases is suggested in Meador, Accommodating State Criminal Procedure and Federal Postconviction Review, 50 A.B.A.J. 928 (1964).