**Bennie Joe HAYDEN, Appellant,**

v.

**WARDEN, MARYLAND PENITENTIARY, Appellee.**

**No. 10061.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 8, 1965.

Decided April 21, 1966.

Petition for Rehearing En Banc
Denied June 3, 1966.

Albert R. Turnbull, Norfolk, Va., (Court-assigned counsel) [Fine, Fine, Legum, Schwan & Fine, Norfolk, Va., on brief], for appellant.

Franklin Goldstein, Asst. Atty. Gen. of Maryland (Thomas B. Finan, Atty. Gen. of Maryland, on brief), for appellee.

Before SOBELOFF, BOREMAN and BRYAN, Circuit Judges.

SOBELOFF, Circuit Judge.

Appellant Hayden is serving a sentence of fourteen years in the Maryland Penitentiary, having been convicted and sentenced in the Criminal Court of Baltimore City in June, 1962, for robbery with a deadly weapon. After a hearing in the District Court on his application for a writ of habeas corpus, relief was denied, and from this action an appeal was taken.

In this court the petitioner's basic contention is that certain evidence admitted at trial was the product of an unconstitutional search and seizure. The state maintains that the search and the seizure were lawful, and urges further that, even if unlawful, petitioner has waived his right to raise the issue in the federal courts because of his failure to object at trial, failure to appeal from the conviction, and withdrawal of his appeal from the state court's denial of post-conviction relief.

I

An armed robbery occurred at eight o'clock on the morning of March 17, 1962, on the premises of the Diamond Cab Company in Baltimore. Two cab drivers saw a man running from the scene and heard shouts of "hold up, stop that man." The cab drivers, proceeding independently, followed the suspected robber to 2111 Cocoa Lane. One of the drivers actually saw him enter the house. The police were immediately notified and in a few minutes arrived at that address. They had been told that the offender was a Negro about 5'8", 25 years old, and wore a light cap and dark jacket.

The police knocked at the door and Hayden's wife answered. The officers

told her that they had information that a holdup man was in the house. There is some dispute as to whether or not Mrs. Hayden objected to the entry of the officers. However this may be, several officers entered and went to all three floors, and when no man other than Hayden was found in the house, they arrested him. They seized a sawed-off shotgun and a pistol which they found in the flush tank of the toilet, some ammunition, a sweater, and a dark gray cap, found under Hayden's mattress, shotgun shells lying in a bureau drawer, and a man's jacket and trousers with a belt, discovered in a washing machine in the basement. The police, however, found no stolen money.

The seized items were admitted in evidence without objection by the defendant's retained counsel. The clothing was used to fix the identity of Hayden as the man seen running from the scene of the crime and into 2111 Cocoa Lane.

Hayden failed to appeal his conviction, but upon his confinement in the Maryland Penitentiary he promptly petitioned the state court for relief under the Maryland Post-Conviction Procedure Act. Relief was denied without the taking of testimony. On appeal from this action the Maryland Court of Appeals remanded the case for an evidentiary hearing with respect to the challenged lawfulness of the search and seizure. After testimony, the post-conviction judge again denied relief, holding "that the search of his home and seizure of the articles in question were proper."

Thereupon, Hayden applied for leave to appeal to the Court of Appeals of Maryland. Before his application was acted upon, however, he requested its withdrawal. The request was granted.[1] He filed the instant habeas corpus petition three months later. His right to appeal to the Court of Appeals of Maryland is now barred by time.

## II

A. We deal first with the failure of trial counsel to make a contemporaneous objection to the admission of the seized articles. The state contends that the failure to object at trial constitutes a waiver by Hayden of his right to assert the constitutional claim in a federal habeas corpus proceeding. In order to preclude consideration of the constitutional claim on federal habeas corpus the state must show that Hayden, acting through his attorney, voluntarily relinquished a known right by failing to object at trial[2] and that the failure to object constitutes an independent and adequate state ground. See Henry v. State of Mississippi, 379 U.S. 443, 452, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), relying on Fay v. Noia, 372 U.S. 391, 438–439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).[3]

1. In the meantime, during the pendency of his application for state post-conviction relief, Hayden had filed two habeas corpus petitions in the federal District Court, both of which had been denied for failure to exhaust available state remedies.

2. The state in its brief speculates that the failure to object was a tactical maneuver on the part of Hayden's trial counsel. The state attributes to him a deliberate purpose to allow the admission of the clothing, so that he might create a reasonable doubt in the minds of the jurors by arguing to them that the police officers conducted a more than usually thorough search and yet were unable to find any stolen money. Hayden's trial counsel, however, testified in the District Court habeas hearing that he did not object because he was under the impression that the arrest and the search were lawful

and thought the articles could not be excluded. Aside from the fact that there is a total absence of testimony to support the state's hypothesis, the tactical maneuver postulated by the state is wholly unrealistic, for the lawyer could have laid a foundation for the same argument to the jury by cross-examination of the police officers. The argument would have been readily available without subjecting the defendant to the damage obviously resulting from the admission of the clothing.

3. In Henry, a case coming to the Supreme Court on direct appeal from a state conviction, it was said:
"* * * a dismissal on the basis of an adequate state ground would not end this case; petitioner might still pursue vindication of his federal claim in a federal habeas corpus proceeding in

See also Dillon v. Peters, 341 F.2d 337, 339 (10th Cir. 1965).

■ It is unnecessary in this case to reach the question of whether Hayden voluntarily relinquished his constitutional claim, for in the state post-conviction proceedings the Court of Appeals of Maryland did not look upon the failure to object as a bar to his constitutional claim. Instead it remanded the case to the lower court for a determination of the legality of the search and seizure. Hayden v. Warden, Maryland Penitentiary, 233 Md. 613, 195 A.2d 692 (1963). Since the Court of Appeals of Maryland did not interpose the failure to object as a bar to consideration of the merits of the constitutional issue, denial of state post-conviction relief cannot be said to rest on an independent state ground. The District Court was therefore not precluded from considering the constitutional question on its merits. Cf. Henderson v. Heinze, 349 F.2d 67 (9th Cir. 1965); Nelson v. People of State of California, 346 F.2d 73 (9th Cir. 1965); Rhay v. Browder, 342 F.2d 345 (9th Cir. 1965).

■■ When the highest court of a state has declined to invoke an independent state ground and has proceeded to the merits of a federal question, it would be incongruous for a federal court to assert the state ground to shut off its review of the federal question. There appears to be no reason for a federal court to refuse to vindicate a federal claim by a more exacting insistence on state procedural requirements than the state court itself demanded. The so-called independent ground, not having been relied on by the state, is simply irrelevant.

■ B. With respect to Hayden's failure to prosecute an appeal from his conviction and the withdrawal of his application for leave to appeal from the state post-conviction decision, the District Court determined that no such deliberate bypass occurred as would prevent Hayden from raising in the federal court the constitutional issue of illegal search and seizure. We uphold the District Court's determination. Hayden's letter to the clerk of the Court of Appeals of Maryland requesting withdrawal of his application for leave to appeal displays complete ignorance of both the judicial process and the consequences of not pursuing his judicial remedies in an orderly fashion.[4] Under these circum-

which the procedural default will not alone preclude consideration of his claim, at least unless it is shown that petitioner deliberately bypassed the orderly procedure of the state courts. Fay v. Noia, supra, [372 U.S.] at 438, [83 S.Ct. 822]." 379 U.S. at 452, 85 S.Ct. at 570.

And at page 447, at page 567 of 85 S.Ct. of the *Henry* opinion the Court observed: "[It is settled] that a litigant's defaults in state proceedings do not prevent vindication of his federal rights unless the State's insistence on compliance with its procedural rule serves a legitimate state interest. In every case we must inquire whether the enforcement of a procedural forfeiture serves such a state interest."

Whether the Supreme Court has in fact abolished the "independent and adequate state procedural ground" as a basis for denying relief in federal habeas corpus proceedings need not, as the text will indicate, be determined in this case. For

an affirmative answer to the question, as well as a penetrating analysis of Henry v. State of Mississippi and Fay v. Noia, see Hill, "The Inadequate State Ground," 65 Colum.L.Rev. 943, 997 (1965). But cf. Henderson v. Heinze, 349 F.2d 67 (9th Cir. 1965); Nelson v. People of State of California, 346 F.2d 73 (9th Cir. 1965).

4. Hayden's letter reads:
"Dear Mr. Young:
"I have an application for leave to appeal under the post conviction procedure act which is docketed at No. 18 Sept. term 1964. Since the opinion by Judge Sodaro is based on assertions contrary to the trial testimony which is in the trial transcript.
"After considering the opinion and the transcript I feel that this appeal is worthless since the statements in the opinion are far from being true, this being so I feel it is the wiser course to refile again in the lower State Court and since I can not have two actions pending at the

stances we cannot find error in the District Court's determination of no deliberate bypass. See Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822 (1963); Pruitt v. Peyton, 338 F.2d 859, 860–861 (4th Cir. 1964); Hunt v. Warden, Maryland Penitentiary, 335 F.2d 936, 944 (4th Cir. 1964).

## III

Turning to the merits of Hayden's petition, we do not disagree with the District Court's determination that the arrest was lawful and the search conducted as an incident thereof constitutionally permissible.

■ A. Appellant does not strenuously contest the legality of his arrest. He concedes that the officers had probable cause to believe that a felony had been committed and that the felon was hiding in the house. There was testimony that the officers knocked on the door and announced the purpose of their entry. The District Court so found the facts and concluded that regardless of the asserted lack of consent on the part of Mrs. Hayden to the entrance of the police, the officers were within their legal powers in entering in "hot pursuit" of a suspected felon.[5]

■ Although the appellant concedes the right of the police to conduct a search as an incident to the lawful arrest, he maintains that in its extent the search exceeded constitutionally permissible limits. The testimony showed that when the officers, approximately five in number, entered they knew only that a man suspected of robbery had run into the house. Not finding the suspect on the first floor, one officer proceeded to the basement while others went to the second floor, where they found Hayden. Learning that he was the only male in the house, the police arrested him, and conducted a search.[6] The arrest and search lasted one hour. In its extent the search did not exceed the broad limits tolerated in Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), where the Supreme Court affirmed the validity of an intensive five-hour search of all four rooms of an apartment, undertaken as an incident to a lawful arrest.

B. This brings us to the principal substantive issue presented by this appeal. The petitioner contends that even if the search itself were legal, the articles of clothing seized by the police were "of evidential value only" and that under the principle repeatedly declared by the Supreme Court, items having evidential value only are not subject to seizure and must be excluded at trial. Gouled v. United States, 255 U.S. 298, 310, 41 S. Ct. 261, 65 L.Ed. 647 (1921); United States v. Lefkowitz, 285 U.S. 452, 464–466, 52 S.Ct. 420, 76 L.Ed. 877 (1932). See also Abel v. United States, 362 U.S. 217, 234–235, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Harris v. United States, 331 U.S. 145, 154, 67 S.Ct. 1098 (1947). The petitioner maintains therefore that under Mapp v. Ohio, 367 U.S. 643, 81 S. Ct. 1684, 6 L.Ed.2d 1081 (1961), the admission of the articles of clothing at his state trial violated his constitutional rights.

■ It cannot be doubted that the proscription against seizure of articles of only evidential value is one of constitutional dimensions. E. g., Gouled v. United States, 255 U.S. 298, 310, 41 S.Ct. 261 (1921); United States v. Lefkowitz, 285 U.S. 452, 464–467, 52 S.Ct.

---

same time I must withdraw my application for leave to appeal.

"I am sorry I waited so late to make up my mind but I am no lawyer and it took me quite some time to make the wiser decision.

"Your Very Truly
/s/ Bennie Joe Hayden"

5. The trial judge in the state post-conviction proceeding found that Mrs. Hayden had consented to the entry of the police.

6. It is unclear whether the clothing taken from the washing machine in the basement was procured before or after the arrest. In the view we take of the case it is unnecessary to resolve this ambiguity in the testimony.

420 (1932).[7] In Harris v. United States, 331 U.S. 145, 154, 67 S.Ct. 1098, 1103 (1947), Chief Justice Vinson, relying on the above cited cases, and others, said:

> "This Court has frequently recognized the distinction between merely evidentiary materials, on the one hand, which may not be seized either under the authority of a search warrant or during the course of a search incident to arrest, and on the other hand, those objects which may validly be seized including the instrumentalities and means by which a crime is committed, the fruits of crime such as stolen property, weapons by which escape of the person arrested might be effected, and property the possession of which is a crime."

The dissenting opinions of Justices Frankfurter, pp. 155, 165–166, 67 S.Ct. pp. 1104, 1108 and Murphy, pp. 183, 187–188, 191, 67 S.Ct. pp. 1113, 1115, 1117, specifically recognized the distinction made by the majority between items subject to seizure and items which may not lawfully be seized. Thus, in the case dealing with the most extensive search ever validated by the Supreme Court, we find the Justices in the majority and those in dissent unanimous in condemning seizures by the police and the later use by the prosecution of articles having evidentiary value only.

The clothing in this case in no way constitutes the "means by which a crime is committed," unlike the things lawfully taken in Abel v. United States, 362 U.S. 217, 237–238, 80 S.Ct. 683 (1960) (forged birth certificate and graph paper with coded message used to conduct espionage activities); Zap v. United States, 328 U.S. 624, 629 & n. 7, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946) (cancelled check used to defraud the Government); Marron v. United States, 275 U.S. 192, 198–199, 48 S.Ct. 74, 72 L.Ed. 231 (1927) (business ledger and various bills used to operate an illegal business); Gottone v. United States, 345 F.2d 165, 166 (10th Cir.), cert. denied, 382 U.S. 901, 86 S.Ct. 234, 15 L.Ed.2d 155 (1965) (lists of names and addresses with unexplained notations, race track results, and odds sheets used to operate illegal gambling business); United States v. Boyette, 299 F.2d 92, 94–95 (4th Cir.), cert. denied, sub nom. Mooring v. United States, 369 U.S. 844, 82 S.Ct. 875, 7 L.Ed.2d 848 (1962) (guest checks used in the operation of a brothel). There is no contention that the articles seized here were used by the felon as a disguise.

Nor did the possession of the clothing constitute a "continuing crime." Examples of types of articles the possession of which constitutes a continuing crime can be found in United States v. Rabinowitz, 339 U.S. 56, 64, 70 S.Ct. 430, 94 L.Ed. 653 (1950) (forged and altered United States postage stamps), and Harris v. United States, 331 U.S. 145, 154–155, 67 S.Ct. 1098 (1947) (false selective service cards). No discussion is required to demonstrate that the clothing was neither contraband nor the fruit of the crime.

No Supreme Court case has discussed the seizure of clothing. Cf. Kremen v. United States, 353 U.S. 346, 77 S.Ct. 828, 1 L.Ed.2d 876 (1957) (indiscriminate seizure of the entire contents of a cabin illegal). Lower federal courts, however, have had occasion to consider the subject. See Morrison v. United States, 104 U.S.App.D.C. 352, 262 F.2d 449, 450–451 (1958) (handkerchief containing tangible evidence of morals offense of "evidential value only" and therefore held not subject to seizure); United States v. Lerner, 100 F.Supp. 765, 768 (N.D.Calif.1951) (identification brace-

---

7. The state contends that the proscription against the seizure of articles of only evidential value is merely an exercise of the supervisory power of the federal courts and does not rise to constitutional proportions. While it is true that Rule 41(b) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. § 41(b), may be interpreted to preclude such seizures, the Supreme Court has not relied on mere supervisory rules to support its decisions on this point, but has instead specifically grounded its decisions on the Fourth Amendment.

let, and documents, "merely evidentiary materials tending to connect the defendant with the crime for which he was arrested"—harboring or concealing a fugitive—and therefore held constitutionally not seizable); United States v. Richmond, 57 F.Supp. 903, 907 (S.D.W.Va. 1944) (articles of wearing apparel useful in the identification of the defendant held not subject to seizure). But cf. United States v. Guido, 251 F.2d 1, 3 (7th Cir.), cert denied, 356 U.S. 950, 78 S.Ct. 915, 2 L.Ed.2d 843 (1958) (shoes worn by bank robber held seizable as "the means" of committing the offense); Trotter v. Stephens, 241 F.Supp. 33, 40–41 (E.D.Ark.1965) (articles of clothing in the possession of accused rapists seizable, although court does not advert to rule prohibiting seizure of articles of only evidential value).

■ In the case before us the articles of clothing were introduced at trial either to aid witnesses in their identification of the defendant or to create an adverse inference by arguing consciousness of guilt from the unusual condition of the clothes in the washing machine and particularly the presence of the belt in the trousers. However compellingly suspicious the circumstances, it cannot be denied that the value of the garment was "evidential only."

The *Richmond* case, above cited, 57 F. Supp. 903, bears a remarkable resemblance to the one under consideration. There, a federal agent observed a man working at an illicit still. The following day the agent went to the defendant's home for the purpose of arresting him if it should turn out that he was the person seen at the still. The agent made the arrest, and as an incident to this lawful arrest seized several articles of defendant's clothing which were later used in evidence for the purpose of demonstrating that other clothing found at the still matched that admittedly belonging to the defendant. The court concluded that even while the search itself was reasonable, the clothing it produced was of evidential value only and hence constitutionally immune from seizure.

The state stresses the fact that before entering Hayden's house, the police officers had been given a brief description of what the suspect was wearing, and that the articles of clothing seized provided a strong link in the prosecution's case against Hayden. But the potency of the evidence to convict was not accepted in *Gouled* as justification for its admission. 255 U.S. at 310, 41 S.Ct. 261. In that case neither the officers' foreknowledge of the existence of the article seized, nor the prior issuance by a judicial officer of a search warrant describing the item served to validate the taking of "evidential" material. 255 U.S. at 307, 41 S.Ct. 261.

We recognize that the search conducted by the officers was lawful; but the law imposes limitations on the types of articles which agents of Government may seize either in the execution of a search warrant or in connection with a lawful arrest. A succinct explanation of the underlying constitutional principle was provided by Judge Learned Hand:

"[I]t is only fair to observe that the real evil aimed at by the Fourth Amendment is the search itself, that invasion of a man's privacy which consists in rummaging about among his effects to secure evidence against him. If the search is permitted at all, perhaps it does not make so much difference what is taken away, since the officers will ordinarily not be interested in what does not incriminate, and there can be no sound policy in protecting what does. Nevertheless, *limitations upon the fruit to be gathered tend to limit the quest itself * *.*" United States v. Poller, 43 F.2d 911, 914, 74 A.L.R. 1382 (2d Cir. 1930) (Emphasis added.)[8]

8. This passage was cited with approval in United States v. Rabinowitz, 339 U.S. 56, 64 n. 6, 70 S.Ct. 430 (1950). See also Comment, "Limitations on Seizure of 'Evidentiary' Objects—A Rule in Search of Reason," 20 U.Chi.L.Rev. 319, 327 (1953), which Professor McCormick has praised as "acute" and "extensive." Mc-

From time to time the line has wavered in the adjudication of the lawfulness of searches, but in no instance has the Supreme Court faltered in its adherence to the distinction so clearly enunciated by Judge Hand between what may and what may not be seized in a lawful search.[9]

Nor do we perceive any rational distinction between private papers that are of only evidential value and articles of clothing of the same character. The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, *papers, and effects* against unreasonable searches and seizures, shall not be violated." (Emphasis added.) Papers of only evidential value are not the sole items immune from seizure.[10]

We are mindful that eminent judges and scholars have challenged the correctness and wisdom of the rule that precludes the seizure and admission in evidence of articles having evidential value

only, even if the search which produced them was itself reasonable and lawful. Chief Justice Traynor has sharply criticized the rule as "an unfortunate * * legal absurdity" and has argued further that it is not of such fundamental importance as to be applicable to the states through the Fourth and Fourteenth Amendments. People v. Thayer, 63 Cal. 2d 635, 47 Cal.Rptr. 780, 408 P.2d 108, 109 (1965).[11] Chief Justice Weintraub, while expressing doubt that the states have leeway to adopt a rule for search at variance with the federal rule fashioned by the Supreme Court, reasoned that shoes with distinctive heels worn by the defendant while committing an armed robbery were an instrumentality of the crime and could be searched for and seized under a warrant specifically describing them. State v. Bisaccia, 45 N.J. 504, 213 A.2d 185 (1965). Directly confronting the mere evidence rule, Chief Justice Weintraub argues cogently that "things may be seized for their inculpatory value alone and that a search

Cormick on Evidence, § 139 n. 1(b), p. 294. But cf. Comment, "Eavesdropping Orders and the Fourth Amendment," 66 Columb.L.Rev. 355, 367 (1966).

9. See Gouled v. United States, 255 U.S. 298, 310, 41 S.Ct. 261 (1921); Marron v. United States, 275 U.S. 192, 198–199, 48 S.Ct. 74 (1927); United States v. Lefkowitz, 285 U.S. 452, 464–466, 52 S.Ct. 420 (1932); Davis v. United States, 328 U.S. 582, 587–589, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946); Zap v. United States, 328 U.S. 624, 629, 66 S.Ct. 1277 (1946); Harris v. United States, 331 U.S. 145, 154, 67 S.Ct. 1098 (1947); Trupiano v. United States, 334 U.S. 699, 704, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948); United States v. Rabinowitz, 339 U.S. 56, 64, 70 S.Ct. 430 (1950); Abel v. United States, 362 U.S. 217, 234–235, 80 S.Ct. 683 (1960); Shellow, "The Continuing Vitality of the *Gouled* Rule: The Search for and Seizure of Evidence," 48 Marq.L.Rev. 172, 175 (1964).

10. The state argues that the exclusionary rule made applicable to the states by Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684 (1961), should be applied only to items seized pursuant to an *unlawful* search, and not to things illegally seized in the course of a search which is itself not unlawful. We find no basis in reason or

authority for such a distinction. In state as well as federal jurisdictions, the proscription against seizure of articles having only evidential value is a proscription grounded on the Fourth Amendment. The Supreme Court has made it abundantly clear that the due process clause of the Fourteenth Amendment requires that all evidence seized in violation of the Fourth Amendment shall be excluded at state trials. See Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Comment, "Search and Seizures of 'Mere Evidence'—Amendment to Or. Rev.Stat. Sec. 141.010—Effect on Prior Law and Constitutionality," 43 Or.L.Rev. 333, 346–349 (1964). Cf. Ker v. State of California, 374 U.S. 23, 34, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

11. Chief Justice Traynor, though expressing doubt as to the wisdom of the rule, held that the medical records under consideration were actually instruments of the crime—fraud in billing for welfare services—thus characterizing the disputed records as within a traditionally recognized category subject to seizure. As already pointed out, it cannot be maintained that this characterization could apply to the clothing in our case.

to that end is valid, so long as it is not otherwise unreasonable * * *." 213 A.2d at 193. Even so staunch an exponent of "individual liberties" as Professor Kamisar has criticized the rule as "unsound and undesirable." Kamisar, "Public Safety v. Individual Liberties: Some 'Facts' and 'Theories,'" 53 J.Crim. L., C. & P.S. 171, 177 (1962). See also Comment, "Eavesdropping Orders and the Fourth Amendment," 66 Colum.L. Rev. 355, 370 (1966). But cf. Note, "Evidentiary Searches: The Rule and the Reason," 54 Geo.L.J. 593 (1966).

Judges, aware of the practical problems faced by police officers and prosecutors in the performance of their duties, have sometimes strained mightily to overcome the exclusionary effect of the mere evidence rule by stretching to the point of distortion the category of "instrumentalities of crime," in order to achieve the admission in evidence of articles manifestly of evidential value only. For example, in United States v. Guido, 251 F.2d 1 (7th Cir.), cert. denied, 356 U.S. 950, 78 S.Ct. 915 (1958), it was broadly declared that shoes could be an instrumentality of crime, for a robber could hardly facilitate escape if he was "fleeing barefooted from the scene of the hold-up." 251 F.2d at 4. While the result in a particular case may not be unreasonable, it can hardly be squared with the pronouncements of the Supreme Court. See Note, "Evidentiary Searches: The Rule and the Reason," 54 Geo. L.J. 593, 610 n. 106 (1966).

While we recognize that the rationale of the rule immunizing from seizure articles of only evidentiary value has been the subject of vigorous debate, we do not feel at liberty to abandon a doctrine so firmly established in the Supreme Court decisions.[12] It may be thought timely to expose the doctrine to re-examination and reinterpretation, with a view to formulating sufficiently flexible guidelines without endangering constitutional protections. However, unless the Court sees fit to depart from its oft reiterated position, the judges of subordinate courts are obligated to adhere to it.

For the reasons outlined, the order of the District Court must be reversed and the case remanded with directions to grant the writ of habeas corpus and discharge the petitioner unless the state will retry him within a reasonable time.

Reversed and remanded.

ALBERT V. BRYAN, Circuit Judge (dissenting):

Because the District Judge's conclusions are for me irrefutable, I cannot join in overturning his decision, notwithstanding the trenchancy of the majority opinion. I find altogether untenable, in the circumstances here, its determinative basis: that the truck driver's jacket and trousers worn by the petitioner Hayden when he committed the robbery were unlawfully *seized* because they were "of evidential value only", and so not admissible at his trial.

The evidential rule of search and seizure has been sustained in other situations but it is inapposite in the setting of this case. The preliminary facts, unquestioned now, were stated by the District Judge as follows:

"On or before March 16, 1962, a man named Miller delivered to Hayden a sawed-off shotgun and a P .38 Luger pistol, and Hayden acquired through Miller or otherwise some ammuntion (sic) for both weapons. About 8 a.m. on March 17, armed with the pistol and perhaps also with the gun, Hayden struck Charles E. McGuirk on the head with the pistol and robbed him of some $363, which he had just obtained from the cashier's cage of the Diamond Cab Company. Two cab drivers saw Hayden running from the scene of the crime, looking back over his shoulder; they gave the alarm, and both of them *followed him several blocks to his home at 2111*

---

12. The impropriety of seizing and putting in evidence items of only evidential value traces back to Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886).

*Koko* [sic] *Lane, which one of the drivers saw him enter.* The Diamond Cab dispatcher reported to the police what he had learned from the victim and what he had learned over the radio from one of the cab drivers. This information was relayed over the police radio to a number of patrol cars, which came to Koko [sic] Lane promptly, some in less than five minutes after Hayden had entered the house. One of the cab drivers, who had parked at the corner nearest 2111 Koko [sic] Lane, pointed out to the officers the house which Hayden had entered; the officers knocked at the door, which was opened by Mrs. Hayden; they told her that they were looking for a robber who was reported to have entered the house, and said they would like to speak to her husband and search the house. She offered no objection. * * *" (Accent added.)

As the validity of the officers' entry and search of the house are uncontested and uncontestable, the pivot of the present decision is the *seizure* of the clothing. Hayden ran home to escape "hot" pursuit by persons who had been at the scene of the robbery and saw him go in the house. They were dutifully and lawfully attempting to apprehend him. While the police were not initially in the chase, they joined while it was still in full cry. Had they collared Hayden before he crossed his threshold, or afterwards but before he undressed, the clothes he wore could unquestionably have been introduced in evidence as identification or for other purposes. Robinson v. United States, 109 U.S.App.D.C. 22, 283 F.2d 508 (1960). How these articles are instantaneously immunized by his disrobement is unclear to me.

These garments were clues to the whereabouts of the robber. The officers did not know Hayden but they knew his attire. In fresh pursuit, they knew that the robber had sought asylum in the house; they did not know the refuge was his home. As the fugitive was not in sight on their entry, they were obliged to undertake a manhunt throughout the house. The seizure of the clothing occurred in the *hue and hunt* for the felon, as well as for the money, the pistol and the shotgun.

Obviously he was using his home as a hideout. Not until *after* the search of the cellar or basement for the felon, when the clothing was found, *was or could* Hayden be accused. Not until then were the police assured that no other man was in the house. On this point, the District Judge found:

"Hayden was feigning sleep in the back room on the *second* floor. Two or three officers roused and questioned him, and *when the officers who were searching the first floor and the cellar reported that no other man was in the house*, they arrested him. At about the same time one of the officers noticed that the toilet in the adjoining bathroom was running continuously, and found the shotgun and pistol immersed in the flush tank. The officers found a clip of ammunition for the pistol, a sweater and a cap under the mattress of Hayden's bed, and ammunition for the shotgun in a bureau drawer in Hayden's room. Meanwhile, the officer who was searching the cellar for a man or the money found a *jacket and trousers of the type the fleeing man was said to have worn, with a leather belt still in place*, in a washing machine." (Accent added.)

While this finding conclusively demonstrates that the arrest was not made until *after* the seizure of the clothes, the relative times of the two incidents are not critical. The important fact is that the seizure was made in tracking the felon and not in collecting evidence, the basis of the precept the majority would enforce. No authority is cited holding that an article seized *in a hunt* for a criminal is inadmissible because it is "of evidential value only". Nor is the item rendered untouchable because found in a quest in the quarry's home.

Again, Hayden's discard and concealment of the habit in which he had been observed on the street were as indicative

of guilt as was his flight. The secreting of himself in the house anywhere—in basement, attic, bedroom, closet or on the roof—would be provable as incriminating conduct. Had he donned a different garb or disguised himself to avoid capture, the dissemblance would certainly be open to proof at trial. The proof would include production of the clothes he hid as well as those in which he reappeared.

Deceptions frequently speak as forcefully as words, and surely whatever a fugitive said to mislead the officer is fair evidence against him. Simply because the conduct or words occur in the accused's home does not bar their admission. Devices and designs to thwart arrest or conviction have never, to my knowledge, been excluded as evidence against the schemer.

Finally, and most important, the clothing was seizable as something used in the commission of the crime, concededly a recognized exception to the rule against seizure of evidence only. Pretending to be asleep, Hayden when finally discovered was undressed and abed. Assuredly, his purpose was to show that he was not equipped to commit a crime at the cab terminal only a few minutes before and several city blocks away. He thus made the issue of whether the apparel in which he had been seen was an aid—a means or an instrument—in his criminal act.

Examples of personal effects converted into implements of crime would be eyeglasses worn by an accused when he committed a crime, but not found on apprehension, and without which he later demonstrates he cannot see; or artificial limbs worn at the time, but later hidden, and without which he cannot walk or handle a weapon. This was virtually the reasoning in United States v. Guido, 251 F.2d 1, 3 (7 Cir. 1958), cert. den. 356 U.S. 950, 78 S.Ct. 915, treating shoes as an instrument of the crime.

This is in no sense to declare clothes qua clothes to be tools of crime. Here, to repeat, they were put in this category by the accused's reliance on his near-nudeness to eliminate himself as the robbery suspect. They are not merely proof of identification. They establish his preparedness to perpetrate the offense; they belie his alibi.

If nakedness can be thus employed to raise a reasonable doubt of guilt, surely it can be refuted by production of the clothes he wore when he robbed and ran. If not, then to impede identification a criminal need only strip immediately after he is inside his front door. Indeed, under the ruling of the Court, he need not bother to hide his clothes. Left plainly visible, they still would not be touchable for they would be of "evidential value only".

I cannot agree to Hayden's release or re-trial simply because his clothes were admitted in evidence.

### ON PETITION FOR A REHEARING EN BANC

HAYNSWORTH, Chief Judge:

I join my brothers in an order denying a petition for rehearing en banc, but I take advantage of the occasion for a word of explanation.

The question in this case has been the subject of extended debate within the court. Judge Bell and I were not members of the panel that originally heard it, but we have participated actively in the discussion. As a result, it is apparent that a majority of the court is of the view that we are bound to apply the "mere evidence" rule because of the broad language employed by the Supreme Court in those opinions holding that private papers which could not have been classed as instruments of the crime are not subject to seizure.

Nevertheless, I think that the language the Supreme Court has employed must be read in the light of what it has held. Neither in what it has held nor in what it has said can I find an inexorable command that we hold inadmissible these articles reasonably seized in the course of a reasonable search.

The Fourth Amendment prohibits only those seizures that are unreasonable, as

it prohibits only those searches that are unreasonable. It is one thing to say that a seizure of a diary containing incriminating entries is unreasonable as is a search having as its objective the discovery and the seizure of such a document. Each is prohibited by the Fourth and Fourteenth Amendments. It is quite another thing to say, however, that tangible articles discovered in the course of a reasonable search have the sanctity of private papers if they cannot be readily classified as instruments or fruits of the crime. An accused's cap on his head or his shoe on his foot has no such sanctity, and, in my view, such articles acquire none when removed from his person and placed in his closet. If the shoe is useful in comparison with the footprint which the culprit left when he fled the scene of the crime, or if a cap is useful in resolving the uncertainties of visual identification, neither should have an immunity from seizure when discovered in the course of a reasonable and lawful search.

With the amendment's proscription of unreasonable searches and unreasonable seizures in mind, I can find nothing in what the Supreme Court has done and said which requires the rejection from evidence of these articles of clothing reasonably seized in the course of a search, which, concededly, was reasonable and lawful. We are not instructed to apply the underlying rule of reasonableness in an unreasonable manner.

As the standards for the admission of confessions are undergoing a continuing process of stiffening, the police are admonished to place greater dependence upon their resources for scientific investigation. Make an impression of the footprint discovered at the scene, they are told, and be prepared to make extensive laboratory analyses of the dried blood on the shirt. Such investigatory procedures will be of little use, however, unless investigators are afforded a reasonable opportunity to obtain possession of the shoe for comparison with the impression and of the bloody shirt for laboratory analysis.

I find nothing unreasonable in the majority's preference that the Supreme Court deal with the matter but, until it does so explicitly, I think subordinate courts are free to declare seizures of articles such as these to be reasonable and not unconstitutional. Merely because of difficulty in stretching the term "instruments of the crime" to encompass them, I do not think they are immune from reasonable seizure in the course of a lawful search. The fact that articles are incriminatory has never in itself been an objection to their seizure.

A majority of the court, however, is of the view that we may not consider the question unsettled. Since, informally, the entire court has thoroughly canvassed our freedom to follow our own notions, it is most unlikely that a rehearing en banc would serve any useful purpose whatever. It is for that reason that I join in the order denying the petition.