371 F.2d 697
 Dorothy HINCHCLIFF, Individually and as Executrix of the Estate of Alfred W. Hinchcliff, Deceased, Plaintiff-Appellees,
v.
James M. CLARKE, Internal Revenue Agent and Frank S. Turbett, Jr., District Director of Internal Revenue, Defendants-Appellants,
UNITED STATES of America, Plaintiff-Appellant,
v.
Donald J. GRAF, Defendant-Appellee.
 No. 16703.
 United States Court of Appeals Sixth Circuit.
 January 19, 1967.
 
 John M. Brant, Department of Justice, Washington, D. C., Richard M. Roberts, Acting Asst. Atty. Gen., Meyer Rothwacks, Joseph M. Howard, Attorneys, Department of Justice, Washington, D. C., on brief; Merle M. McCurdy, U. S. Atty., Harry E. Pickering, Asst. U. S. Atty., Cleveland, Ohio, of counsel, for appellants.
 Lewis Perelman, Cleveland, Ohio, William Patrick Clyne, Lewis Perelman, Cleveland, Ohio, on brief, for appellee, Dorothy Hinchcliff.
 Before EDWARDS and PECK, Circuit Judges, and TAYLOR,* District Judge.
 EDWARDS, Circuit Judge.
 
 
 1
 We are concerned in these appeals with two cases generally related to the same issues. In the first, the government sought — and was denied — enforcement of an Internal Revenue Service summons addressed to an accountant named Graf. The summons required Graf to produce certain records in his possession pertaining to the income tax problems of his client, Dorothy Hinchcliff, and her deceased husband.
 
 
 2
 The summons served upon Graf, under authority of Int.Rev.Code of 1954, § 7602, required production of the following:
 
 
 3
 "All books, records, work papers, and files pertaining to the above-named taxpayers. These records should include all net worth statements, financial statements, and profit and loss statements, certified or not."
 
 
 4
 In addition to denying enforcement of this summons, the order of the District Judge for the Northern District of Ohio, Eastern Division, also directed return of certain evidence already acquired by the IRS and enjoined the government from using same or reacquiring it in any manner.
 
 
 5
 The second action is a complaint filed by Mrs. Hinchcliff in the United States District Court for the Northern District of Ohio which alleged that an IRS agent named Clarke and his IRS District Director were threatening to re-examine the books of account and the income tax returns of the Hinchcliffs for the years 1945 through 1957, that such years had already been examined, and that the re-examination was barred by the Statute of Limitations and by Int.Rev.Code of 1954, §§ 7605(a) and (b), as amended.
 
 
 6
 The taxpayer sought to quash the administrative summons previously referred to and to suppress any evidence which had previously been (allegedly illegally) turned over to the Department of Internal Revenue by Graf and to enjoin the government's use of such evidence in any way. The District Judge's order granted the relief sought.
 
 
 7
 The section of the Internal Revenue Code of 1954 which is relied upon by the taxpayer and the District Judge reads as follows:
 
 
 8
 "(b) Restrictions on Examination of Taxpayer. — No taxpayer shall be subjected to unnecessary examination for investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary." Int.Rev. Code of 1954, § 7605.
 
 
 9
 The section of the Internal Revenue Code of 1954 relied upon by the government reads as follows:
 
 
 10
 "§ 7602. Examination of books and witnesses
 
 
 11
 "For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized —
 
 
 12
 "(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
 
 
 13
 "(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
 
 
 14
 "(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry." Int.Rev.Code of 1954, § 7602.
 
 
 15
 At trial the evidence disclosed that Clarke, who works on civil aspects of the Department's endeavors, had been assigned to investigate the return of Mrs. Dorothy Hinchcliff for the years 1957, 1958 and 1959. Prior years as to this taxpayer and her now deceased husband and his estate had previously been reviewed and closed. No letter informing the taxpayer of intention to reopen had been sent by the Commissioner.
 
 
 16
 In pursuance of this assignment, Clarke went to Graf, a certified public accountant, who had for many years been first a bookkeeper and then accountant for the Hinchcliffs. Clarke testified that he asked Graf to show him his working papers pertaining to the Hinchcliff account and warned him not to give him anything which pertained to the closed years and which represented the taxpayer's own records.
 
 
 17
 It is, however, undisputed that Graf, in pursuance of this request, turned over something over 100 papers, a substantial number of which were records belonging to the taxpayer, which had been left with the accountant. Some of these pertained to years prior to 1957. It appeared that some word of this reached Mrs. Hinchcliff's lawyer and that he called Graf and protested vehemently against Graf's making any such disclosure of Mrs. Hinchcliff's affairs to the IRS. Whereupon Graf asked for the papers back. Clarke had already had them photostated, but he dutifully took them back and at the same time served on Graf a summons for all of them. The two dates involved here are May 3, 1961, when the papers were turned over by Graf to Clarke, and May 19, 1961, when Clarke served the summons.
 
 
 18
 Graf then turned over the documents to Clarke, who sealed them in Graf's office, where they still remain; and this litigation followed.
 
 
 19
 The government in this appeal argues that § 7605 of the Revenue Code relied upon by the District Judge applies only to "the books of account" in possession of the taxpayer; that a summons, even for the taxpayer's own records which are in the hands of a third party, was wholly appropriate and enforceable, and that a certified public accountant could not be found to be, as the District Judge had found Graf, an employee and agent of the taxpayer so that the taxpayer had standing to object to the summons served on him for her records.
 
 
 20
 In this regard the government cited and relied on Deck v. United States, 119 U.S.App.D.C. 240, 339 F.2d 739 (1964), cert. denied 379 U.S. 967, 85 S.Ct. 660, 13 L.Ed.2d 560; In re Fahey, 192 F.Supp. 492 (W.D.Ky.), aff'd, 300 F.2d 383 (C.A. 6, 1961). These cases do indeed appear to say that the working papers of a public accountant are his own property and can be reached by a summons served on him, even though the information came from a taxpayer client.
 
 
 21
 Further, there is an Ohio Statute which squarely holds that the working papers of a certified public accountant are his property. 47 Ohio Rev.Code § 4701.19 (1966 Supp.).
 
 
 22
 Under what we deem to be settled law cited above, it appears clear to us that the documents which are the work product of Graf as a professional accountant clearly may be the subject of a summons and the District Judge was in error in quashing the summons as to these documents.
 
 
 23
 Further, we believe that the District Judge was in error in holding that Int.Rev.Code § 7605 barred the summons issued by the IRS, or rendered illegal the visit by Clarke to Graf's office, or his inspection of the documents voluntarily shown him by Graf.
 
 
 24
 Section 7605 of the Int.Rev.Code by its express language is applicable only to the "taxpayer" and provides a limitation only upon inspection of "a taxpayer's books of account." The notice of reopening provided for is required "after investigation." The logical construction of this section would be that it served as no bar to IRS investigation of closed years where its investigation pertained to information or records in the possession of third persons.
 
 
 25
 In reaching a similar construction of § 7605, the Second Circuit said:
 
 
 26
 "A construction limiting the section to its unambiguous language is not unfair to the taxpayer. It protects him from unnecessary examinations or investigations. An investigation, however, often requires a long period of time. There may be many ramifications which lead into many areas. Each new clue investigated is not a new investigation in a Section 7605(b) sense. A taxpayer cannot properly claim that because IRS has summoned six third parties it cannot summon six additional without showing good cause. The investigation continues until completed as one investigation." Application of Magnus, 299 F.2d 335, 337 (C. A. 2, 1962), cert. denied, 370 U.S. 918, 82 S.Ct. 1556, 8 L.Ed.2d 499 (1962).
 
 
 27
 See also, In re Magnus, Mabee & Reynard, Inc., 311 F.2d 12 (C.A. 2, 1962), cert. denied, 373 U.S. 902, 83 S.Ct. 1289, 10 L.Ed.2d 198 (1963); Hubner v. Tucker, 245 F.2d 35, 38-39 (C.A. 9, 1957).
 
 
 28
 The congressional purpose, as revealed by the language of the statute, was not to prohibit all investigation of closed income tax accounts, but to guarantee that taxpayers whose accounts had been closed would not be subjected to "unnecessary" harassment by being required frequently to present their "books of account" to the income tax agency.
 
 
 29
 What this appellate record discloses as to the documents and papers turned over by Graf to Revenue Agent Clarke is that few if any of them represent what may reasonably be construed as "books of account" of the taxpayer, within the meaning of Int.Rev.Code § 7605.
 
 
 30
 Since no approach has been made to this taxpayer in person, and since, as we have previously held, an accountant is an independent contractor and not an agent or employee of the taxpayer, we find no violation of the statute in question.
 
 
 31
 We also believe the District Judge was in error in holding that the summons was issued in violation of the United States Constitution, Amendment IV. Its language followed exactly the language of the authorizing statute, Int. Rev.Code § 7602.
 
 
 32
 The constitutionality of a summons issued under this statute has been repeatedly upheld. Eberhart v. Broadrock Development Corp., 296 F.2d 685 (C.A. 6, 1961), cert. denied, 369 U.S. 871, 82 S. Ct. 1139, 8 L.Ed.2d 275 (1962); Foster v. United States, 265 F.2d 183 (C.A.2, 1959), cert. denied, 360 U.S. 912, 79 S. Ct. 1297, 3 L.Ed.2d 1261 (1959).
 
 
 33
 This brings us to consideration of the lengthy opinion which the District Judge wrote on the government's motion for rehearing of his original order. In it the District Judge changed his emphasis from the statutory provision previously cited and planted his denial of rehearing primarily on the Fourth Amendment to the United States Constitution and by implication on the Fifth Amendment likewise. In this regard the District Judge placed great reliance on Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886).
 
 
 34
 The Boyd case stands generally for the proposition that the Fourth and Fifth Amendments of the United States Constitution read together forbid judicial warrants for searches and seizures of a person's letters and papers in a search for evidence of fraud against the revenue laws. The District Judge appears to hold that this doctrine is effective in relation to a search for evidence in a civil proceeding for determination of income tax.
 
 
 35
 The United States Supreme Court has squarely before it at present the problem of whether the Fourth Amendment prohibition on "unreasonable searches and seizures" bars evidence seized pursuant to a lawful search in a criminal proceeding where that evidence constitutes items claimed to have been of evidential value only. Hayden v. Warden, 363 F.2d 647 (C.A. 4, 1966), cert. granted, 385 U.S. 926, 87 S.Ct. 290, 17 L.Ed.2d 210 (1966).
 
 
 36
 Whatever may be the result in the criminal proceedings in the Hayden case above, in the instant case we do not deal with a "criminal proceeding." We decline to extend the Boyd doctrine to bar an administrative summons for financial records relevant to a civil proceedings for collection of income tax where that summons is authorized by a congressional enactment, and where the constitutionality of the statute has to date been repeatedly upheld.
 
 
 37
 By brief and at oral argument the IRS seeks to assure this court (as it did the District Judge) that its investigation in the Hinchcliff matter has no purpose of possible criminal prosecution. It may be that such prosecution is effectively barred by the statute of limitations, as suggested by the IRS brief. However this may be, our decision in this case is squarely planted upon the representation made to us. Hence, no information secured as a result of this decision may be employed in any criminal prosecution.
 
 
 38
 Finally, we note that some 300 papers have been impounded under the administrative summons and that the summons did not follow the 10-day notice rule of § 7605(a). Prior to the IRS gaining access to these documents, we believe that the District Judge should review them to ascertain whether or not any should be excluded because they are properly to be described as "books of account" of the taxpayer. See Int.Rev.Code § 7605.
 
 
 39
 If the IRS had followed the 10-day notice requirement of the statute, clearly the taxpayer would have been able to repossess herself of anything properly described as her "books of account."
 
 
 40
 Reversed and remanded for further proceedings not inconsistent with this opinion.
 
 
 
 Notes:
 
 
 *
 Honorable Robert L. Taylor, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation